The STATE of Ohio, Appellee,

v.

PIERSON, Appellant.

[Cite as *State v. Pierson*, 149 Ohio App.3d 318, 2002-Ohio-4515.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2001–P–0077.

Decided Aug. 30, 2002.

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela J. Holder, Assistant Prosecuting Attorney, for appellee.

Carter R. Dodge, for appellant.

JUDITH A. CHRISTLEY, Judge.

{¶ 1} This is an accelerated calendar appeal taken from the final judgment of the Portage County Municipal Court, Ravenna Division, wherein appellant, Anne C. Pierson, pleaded no contest to operating a motor vehicle while under the influence of alcohol after her motion to dismiss and motion to suppress were denied.[1]

{¶ 2} The following procedural history is relevant to this appeal. On February 5, 2001, appellant was cited for operating a vehicle while under the influence of alcohol and/or drugs, in violation of R.C. 4511.19(A)(1), and failure to control the vehicle, in violation of R.C. 4511.202.

{¶ 3} After she entered a plea of not guilty to the charges, a pretrial conference was scheduled for March 20, 2001, and a jury trial was scheduled for April 10, 2001. But, on March 26, 2001, appellant filed a motion to continue the March 20, 2001 pretrial. In a judgment entry dated March 26, 2001, the trial court granted the continuance requested by appellant.

{¶ 4} As a result, the pretrial was rescheduled for May 1, 2001. Then, on May 21, 2001, appellant filed a motion to dismiss and a motion to suppress. Following a hearing, on June 7, 2001, the trial court denied appellant's motion to dismiss the charges and motion to suppress the evidence.

{¶ 5} On June 12, 2001, a sentencing hearing was held wherein appellant entered a plea of no contest and was found guilty of operating a vehicle while under the influence of alcohol, in violation of R.C. 4511.19(A)(1), while the remaining charge was dismissed. Appellant was sentenced accordingly, and this is reflected in a judgment entry dated June 15, 2001. The sentence was stayed pending the outcome of this appeal.

{¶ 6} It is the denial of her motion to dismiss and motion to suppress from which appellant appeals, submitting two assignments of error for our consideration:

---

1. At oral arguments, an issue was raised concerning a conflict of interest between a member of this panel and trial defense counsel. Upon discussion, the parties waived any such conflict.

{¶ 7} (1) "The trial court erred in denying defendant's motion to dismiss for the state's failure to try defendant in accordance with statutory and constitutional speedy trial limits."

{¶ 8} (2) "The trial court erred in denying defendant's motion to suppress for the reason that the warrantless arrest of defendant was unlawful and the evidence thereafter seized should have been suppressed and this matter dismissed."

{¶ 9} In assignment of error one, appellant presents two separate issues concerning her right to a speedy trial. We will address each one in turn.

{¶ 10} First, appellant contends that the charges should have been dismissed because she was not tried within the statutorily prescribed time limit of 90 days. According to appellant, there is no evidence that she submitted a waiver of her right to a speedy trial. Furthermore, appellant believes that there is nothing in the trial court's docket that would qualify as an exception or extension of the 90–day period.

{¶ 11} For instance, appellant suggests that while the trial court's docket reflects that on March 26, 2001, a motion for continuance was filed, it fails to indicate who filed this motion or for what reason. According to appellant, the next docket entry indicates only that a motion was granted and fails to specify the type of motion granted or whether the granted motion was one for a continuance.

{¶ 12} "The standard of review of a speedy trial issue is to count the days of delay chargeable to either side and determine whether the case was tried within the time limits set by R.C. 2945.71." *State v. Blumensaadt,* (Sept. 21, 2001), 11th Dist. No. 2000–L–107, 2001 WL 1116458. R.C. 2945.71(B)(2) requires that a defendant charged on a first-degree misdemeanor be brought to trial within 90 days after arrest or service of summons. *State v. Burdick* (May 26, 2000), 11th Dist. No. 98–G–2209, 2000 WL 688729, at * 7; *State v. Lewis* (June 26, 1998), 11th Dist. No. 97–P–0092, 1998 WL 553483, at * 2. Under R.C. 2945.71(D), misdemeanor offenses of varying degrees that arise out of the same act or transaction "shall be brought to trial * * * within the time period required for the highest degree of offense charged."

{¶ 13} As previously mentioned, appellant was charged with driving while under the influence of alcohol in violation of R.C. 4511.19(A)(1), a misdemeanor of the first degree, and failure to control the vehicle, in violation of R.C. 4511.202, a minor misdemeanor. Therefore, the state was required to bring appellant to trial within 90 days of her arrest once formal charges were actually pending against her. *Burdick* at * 7.

{¶ 14} Here, formal charges were filed against appellant when she was issued the citation on the evening of her arrest. Therefore, the statutory time for bringing appellant to trial commenced on the date of her arrest, which was February 5, 2001. *State v. Stamps* (1998), 127 Ohio App.3d 219, 223, 712 N.E.2d 762; *Burdick* at * 7. Given that the day of the arrest does not count against the state, the speedy trial clock began to run on February 6, 2001. *Stamps* at 223.

{¶ 15} Hence, under the 90–day time period set forth in R.C. 2945.71(B)(2), the state had to try appellant by May 6, 2001. However, May 6, 2001, was a Sunday. When the last day for speedy trial is a Sunday, Crim.R. 45 extends the time period until the end of the following day. *State v. McCornell* (1993), 91 Ohio App.3d 141, 145, 631 N.E.2d 1110.[2] Thus, appellant's speedy trial date was automatically extended to Monday, May 7, 2001. Id. However, the trial court did not find appellant guilty until June 15, 2001.

{¶ 16} Once the defendant demonstrates that she was not brought to trial within the applicable speedy trial limits, she has set forth a prima facie case for dismissal. *State v. Baker* (1993), 92 Ohio App.3d 516, 525, 636 N.E.2d 363; *State v. Smith* (Aug. 10, 2001), 11th Dist. No. 2000–A–0052, 2001 WL 901016, at * 5. The burden then shifts to the state to provide evidence that the defendant's right to a speedy trial was not violated. *Baker* at 525–526, 636 N.E.2d 363; *Smith* at * 6.

{¶ 17} Extensions of the time for calculating the speedy trial date are permissible for any of the reasons set forth in R.C. 2945.72. Among the categories set forth in R.C. 2945.72 are the following:

{¶ 18} "The time within which an accused must be brought to trial, or, in the case of felony, to preliminary hearing and trial, may be extended only by the following:

{¶ 19} " * * *

{¶ 20} "(E) *Any period of delay necessitated by reason of a* plea in bar or abatement, proceeding, or action *made or instituted by the accused*;

{¶ 21} " * * *

{¶ 22} "(H) *The period of any continuance granted on the accused's own motion*, and the period of any reasonable continuance granted other than upon the accused's own motion[.]" (Emphasis added.)

{¶ 23} For the reasons that follow, we determine that the time for bringing appellant to trial was extended by the operation of R.C. 2945.72(E) and (H).

---

2. Crim.R. 45(A) provides that if the last day of a time period is a Sunday, "the [statutory time] period runs until the end of the next day that is not Saturday, Sunday, or legal holiday."

{¶ 24} As mentioned earlier in this opinion, appellant was arrested on February 5, 2001. Subsequently, a pretrial was scheduled for March 20, 2001. However, on March 26, 2001, appellant filed a motion to continue the March 20, 2001 pretrial "to a future date and time convenient for the Court." According to appellant's motion, the continuance was sought for reason that in the course of traveling from [defense counsel's] office with Ms. Pierson, the defendant herein, to the pre-trial in the early afternoon of March 20th the automobile driven by [defense] counsel broke down and had to be towed * * *. [Defense] counsel for defendant Pierson telephoned the Court at 12:30 p.m. and thereafter from time to time until he reached the Court and was advised to file this motion for a continuance of the pre-trial."

{¶ 25} In a judgment entry dated March 26, 2001, the trial court granted appellant's motion for continuance. However, appellant maintains that the trial court's docket does not contain an entry granting a continuance and stating who requested the continuance, the reasons for the continuance, or the party to whom the continuance is chargeable.

{¶ 26} Contrary to appellant's assertion, the trial court did not speak through the docket. Rather, "it is axiomatic that a trial court *only* speaks through its judgment entries." (Emphasis sic.) *State v. Blankenship* (Sept. 7, 2001), 11th Dist. No. 2000–P–0097, 2001 WL 1023645. See, also, *Hairston v. Seidner* (2000), 88 Ohio St.3d 57, 58, 723 N.E.2d 575; *Gaskins v. Shiplevy* (1996), 76 Ohio St.3d 380, 382, 667 N.E.2d 1194; *State v. Mincy* (1982), 2 Ohio St.3d 6, 8, 2 OBR 282, 441 N.E.2d 571; *State v. Reuschling* (1986), 30 Ohio App.3d 81, 82, 30 OBR 138, 506 N.E.2d 558. Therefore, we will consider the trial court's judgment entry, rather than the docket, as controlling.

{¶ 27} In *State v. Geraldo* (1983), 13 Ohio App.3d 27, 30–31, 13 OBR 29, 468 N.E.2d 328, the court held:

{¶ 28} "For purposes of R.C. 2945.72, the unequivocal and repeated holding of the Ohio Supreme Court (and of this court) has been: (1) that the granting of a continuance *must* be recorded by the trial court in its journal entry; (2) that the journal entry identify the party to whom the continuance is chargeable; and (3) that if the trial court is acting *sua sponte,* the journal entry *must* so indicate and must set forth the reasons justifying the continuance. See, *e.g., State v. Mincy* (198[2]), 2 Ohio St.3d 6, 8 [2 OBR 282], 441 N.E.2d 571; *State v. Siler* (1979), 57 Ohio St.2d 1, 3 [11 O.O.3d 1], 384 N.E.2d 710; *State v. Lee* (1976), 48 Ohio St.2d 208, 209 [2 O.O.3d 392], 357 N.E.2d 1095; *State v. Broerman* (Feb. 18, 1983), Lucas App. No. L–82–284, unreported [1983 WL 13845]. * * * Periods of time otherwise tolled by a defense continuance must be counted against the state, if not so recorded as indicated above. See *State v. Pickens* [(July 1, 1983), 6th Dist.

No. 83–4, 1983 WL 6855], *supra,* at 3." (Emphasis sic.)   See, also, *Baker,* 92 Ohio App.3d at 530–531, 636 N.E.2d 363.

{¶ 29}   In the instant matter, the continuance at issue was not requested by the state or made sua sponte by the trial court.   Rather, the continuance was granted at the request of appellant, as evidenced by the trial court's March 26, 2001 judgment entry:

{¶ 30}   "Defendant's motion to continue the pre-trial previously scheduled to occur on March 20, 2001 is granted."

{¶ 31}   While the judgment entry clearly identifies appellant as request-ing the continuance, arguably the entry does not specify the reasons for granting the continuance.   However, it is not necessary for the trial court to set forth the reasons for granting a continuance when such is at the defendant's request. *State v. Pocius* (Dec. 13, 1996), 11th Dist. No. 95–L–179, 1996 WL 761213, at * 6, citing, *Baker,* 92 Ohio App.3d at 531, 636 N.E.2d 363.   See, also, *Stamps,* 127 Ohio App.3d at 224–225, 712 N.E.2d 762.   This is because appellant was fully aware of the reasons for the continuance that *she* requested.   Id.

{¶ 32}   Thus, given that appellant's reasons and request for a continuance were in the record, the trial court's explanation for granting the continuance is unnecessary:

{¶ 33}   "When the defendant's request for a continuance is in the record, the absence of an explanation for the continuance in a journal entry should not allow a defendant to use the speedy-trial statute as a sword rather than the shield that it was designed to be."   Id. at 225, 712 N.E.2d 762.

{¶ 34}   Furthermore, by granting appellant's motion for a continuance because of her failure to appear at a pretrial conference, it is clear that the continuance was chargeable to appellant despite the fact that the court did not expressly make this determination.

{¶ 35}   In the syllabus of *Mincy,* the Supreme Court of Ohio held:

{¶ 36}   "When *sua sponte* granting a continuance under R.C. 2945.72(H), the trial court must enter the order of continuance and the reasons therefor by journal entry prior to the expiration of the time limit prescribed in R.C. 2945.71 for bringing a defendant to trial."   2 Ohio St.3d 6, 2 OBR 282, 441 N.E.2d 571.

{¶ 37}   *Mincy,* however, does not require a trial court to identify the party to whom the continuance is to be charged:

{¶ 38}   "*Mincy,* which considered only *sua sponte* continuances ordered by the trial court, requires that a continuance be entered only before the speedy-trial period expires and that a reason be given for the continuance.   Naming the party to whom the continuance is to be charged is good practice, *but not a formal*

*requirement,* regardless of who requests the continuance." (Emphasis added.) *Stamps,* 127 Ohio App.3d at 225, 712 N.E.2d 762. See, also, *State v. Pickens* (Sept. 18, 1998), 6th Dist. No. E–98–005, 1998 WL 636788, at * 1, 1998 Ohio App. LEXIS 4351, at 3–4; *State v. Flowers* (Aug. 13, 1998), 6th Dist. No. L–92–337, 1998 WL 526778, at * 2.[3]

{¶ 39}  Accordingly, while appellant did not formally execute a waiver of speedy trial form, her request for a continuance extended the speedy trial time period.[4]  As a result, we hold that the trial court's March 26, 2001 judgment entry adequately continued the criminal proceedings upon request by appellant.

{¶ 40}  In summation, appellant was brought to trial within the allotted 90 days.  The trial court's continuance of the pretrial conference upon appellant's request from March 26, 2001 (the date appellant's motion for continuance was filed), to May 1, 2001 (the rescheduled date for the pretrial), is chargeable to appellant.  These 36 days plus the 17 days between appellant's filing the May 21, 2001 motion to dismiss and motion to suppress and the trial court's June 7, 2001 ruling on the motions total 53 days, which are chargeable to appellant.[5]  In applying R.C. 2945.71, these 53 days are to be deducted from the 130 days between her arrest on February 5, 2001, and the trial court's acceptance of appellant's no contest plea on June 15, 2001, for a total of 77 speedy trial days. Accordingly, appellant was brought to trial within the statutory period allowed by R.C. 2945.71(B)(2).

{¶ 41}  Second, appellant takes issue with the fact that the trial court denied her motion to dismiss on the grounds that a trial had been scheduled prior to the expiration of 90 days following her arrest.  According to appellant, the trial court erred in attempting to overrule the motion to dismiss on this basis.

{¶ 42}  At the June 7, 2001 hearing, the trial court initially denied appellant's motion to dismiss for the following reasons:

{¶ 43}  "Okay. Well, according to the Court's records, the complaint was filed on the 5th of February of this year, and the Court of course had 90 days from that date to dispose of the case.  *It was originally scheduled for a jury trial on*

---

3.  The decisions rendered in *Flowers* and *Pickens* modified the Sixth Appellate District's holding in *Geraldo*.

4.  R.C. 2945.72(H) provides that a "continuance granted on the accused's own motion" extends the speedy trial time period.

5.  A motion to dismiss and a motion to suppress toll the time in which a defendant must be brought to trial from the date the motions are filed.  R.C. 2945.72(E); *Blumensaadt; Burdick* at * 7.

*10th of April, which was within the 90 days, so I will overrule that motion.*"[6] (Emphasis added.)

{¶ 44} We agree with appellant that the trial court's foregoing rationale was incorrect. A plain reading of R.C. 2945.71 demonstrates that the mere setting of a trial date is irrelevant. Rather, it is the date that the defendant is actually "brought to trial" that is relevant to calculating the speedy trial time. R.C. 2945.71(B).

{¶ 45} An appellate court, however, "is not authorized to reverse a correct judgment merely because erroneous reasons were assigned as a basis thereof." *State ex rel. Carter v. Schotten* (1994), 70 Ohio St.3d 89, 92, 637 N.E.2d 306. See, also, *State v. Gibbs* (June 9, 2000), 11th Dist. No. 98–T–0190, 2000 WL 757458, at * 7. Thus, regardless of the trial court's reasons, we must affirm the court's judgment because as explained earlier, the court correctly denied appellant's motion to dismiss because her right to a speedy trial was not violated. Based on the foregoing reasons, appellant's first assignment of error is without merit.

{¶ 46} In the second assignment of error, appellant challenges that trial court's denial of her motion to suppress on the basis that the warrantless arrest was made without probable cause and in violation of R.C. 2935.03(A).

{¶ 47} At a hearing on a motion to suppress, the trial court functions as the trier of fact. As such, the trial court it is in the best position to weigh the evidence by resolving factual questions and evaluating the credibility of witnesses. *State v. Mills* (1992), 62 Ohio St.3d 357, 366, 582 N.E.2d 972; *State v. Smith* (1991), 61 Ohio St.3d 284, 288, 574 N.E.2d 510; *State v. DePew* (1988), 38 Ohio St.3d 275, 277, 528 N.E.2d 542; *State v. Fanning* (1982), 1 Ohio St.3d 19, 20, 1 OBR 57, 437 N.E.2d 583.

{¶ 48} On review, an appellate court must accept the trial court's findings of fact if they are supported by competent, credible evidence. *State v. Retherford* (1994), 93 Ohio App.3d 586, 592, 639 N.E.2d 498; *State v. Guysinger* (1993), 86 Ohio App.3d 592, 594, 621 N.E.2d 726; *State v. Klein* (1991), 73 Ohio App.3d 486, 488, 597 N.E.2d 1141. After accepting the factual findings as accurate, the reviewing court must independently determine as a matter of law whether the

---

6. {¶ a} As an aside, we note that the trial court provided additional reasons for denying appellant's motion to dismiss:

{¶ b} "The Court's entire file does reflect in fact that Defense counsel [for appellant] moved for the continuance. The Court granted the continuance because Defense counsel moved for it and that did toll the time, and I am going to overrule the motion to dismiss on the issue of timeliness. I find that this case is being timely brought to trial."

applicable legal standard has been satisfied. *Retherford* at 592, 639 N.E.2d 498; *Klein* at 488, 597 N.E.2d 1141.

{¶ 49} By way of background, the following facts were adduced at the suppression hearing. On February 5, 2001, at approximately 3:55 p.m., Steve Djubasak, a truck driver, was traveling on the Ohio Turnpike when he saw a black Volvo pass him at an extremely high rate of speed in the left lane. At the suppression hearing, Djubasak testified that he was unable to tell how many people were in the car, or whether a man or a woman was driving the vehicle.

{¶ 50} Approximately ten minutes later, Djubasak observed "a black Volvo on the side of the road—on the right side of the road; wheels all cocked, steam coming out of the engine." Although Djubasak did not witness the accident, he pulled over approximately 100 feet in front of the vehicle and called 911 on his cellular phone. During this time, Djubasak observed a blonde-haired woman, whom he later identified at the suppression hearing as appellant, alone in the vehicle and positioned in the driver's seat with both hands on the steering wheel. Other than Djubasak and appellant, no one else was at the scene.

{¶ 51} While sitting in his vehicle, Djubasak saw appellant throw a white plastic bag from the passenger side front widow, get out of the vehicle from the driver's side, pick up the plastic bag and throw it over the guardrail embankment on the side of the road. Upon observing this, Djubasak got out of his vehicle to retrieve the plastic bag, which contained an empty container of a six-pack of beer. Djubasak testified that when he confronted appellant with the contents of the bag, he could smell alcohol on her person. At some point, appellant accused Djubasak of rape. When the state trooper arrived on the scene, appellant was approximately 100 feet down the road on foot.

{¶ 52} According to Djubasak, the above information was relayed to the troopers who arrived at the scene. However, Djubasak did not indicate when or to which officers this information was actually communicated.

{¶ 53} Trooper Adam M. Doles of the Ohio State Highway Patrol testified that on February 5, 2001, he was dispatched to a traffic crash at milepost 188 on the turnpike in Streetsboro, Ohio. When Trooper Doles arrived at the scene, only Djubasak and appellant were present. At that point, the trooper observed appellant walking away from the damaged black Volvo. Trooper Doles placed his hand on the hood of the vehicle and discovered that the engine was warm.

{¶ 54} During the suppression hearing, Trooper Doles acknowledged that he did not have any contact with appellant at the crash scene. Instead, the trooper took a statement from Djubasak whereby he was informed that Djubasak had observed a black Volvo traveling at a high rate of speed prior to seeing the vehicle on the side of the road. According to Trooper Doles, Djubasak told him

that he spoke with the driver and that she appeared to be either drinking or have an odor of alcoholic beverage on her person. At that point, Sergeant Charles E. Veppert of the Ohio State Highway Patrol also appeared on the scene to assist Trooper Doles.

{¶ 55} When Sergeant Veppert arrived on the scene, appellant was approximately 200 feet away from the black Volvo. Upon approaching appellant, Sergeant Veppert asked whether she was involved in a crash. Appellant responded in the negative. Instead, appellant explained to Sergeant Veppert that the vehicle was on the turnpike because "she was driving down the road and it [the vehicle] quit running."[7] Appellant further stated that she was alone in the vehicle.

{¶ 56} While Sergeant Veppert was speaking with appellant, he noticed a very heavy odor of alcohol on her person, her speech was slurred, she had some difficulty with her balance, she used the guardrail for support, and she had become upset. In spite of this, appellant denied consuming alcohol; rather, she explained that alcohol had been spilled on her jacket.

{¶ 57} Although Sergeant Veppert did not indicate that he spoke with Djubasak prior to arresting appellant, Sergeant Veppert did speak with Trooper Doles, who advised him that a crash had occurred,[8] and that he had a witness who saw erratic driving. Thereupon, Sergeant Veppert arrested appellant for driving while under the influence of alcohol.[9] According to Sergeant Veppert, field sobriety tests were not administered to appellant at the scene due to her combative behavior.

{¶ 58} After placing appellant under arrest, Sergeant Veppert failed to advise appellant of her *Miranda* rights. As a result, the trial court suppressed the

---

7. {¶ a}  However, on cross-examination, Sergeant Veppert testified as follows:

{¶ b}  "Q. Now, in her [appellant] conversation as I recall she used the phrase that her car died, did she not?

{¶ c}  "A. Yes, I believe so.

{¶ d}  "Q. But I didn't hear her say that she was actually driving the car. Did you hear [her] say that?

{¶ e}  "A. *She never—I don't think she ever came out and said, 'I was driving the car.'*" (Emphasis added.)

{¶ f}  Thus, according to Sergeant Veppert, appellant never specifically stated that "she was driving the car." Rather, appellant told Sergeant Veppert that "she was driving down the road and it [the vehicle] quit running."

8.  Trooper Doles conducted an accident investigation and determined that the black Volvo had made contact with the center median wall on the turnpike.

9.  Trooper Doles subsequently issued the citation to appellant for driving while under the influence of alcohol and failure to control the vehicle.

postarrest statements made by appellant to the officers.[10]

{¶ 59}  Having summarized the facts advanced at the suppression hearing, we consider appellant's second assignment of error.  Here, she maintains that the arresting officer did not observe her operate the motor vehicle while under the influence of alcohol; instead, the police officer's only source of information was the hearsay declarations of a civilian witness, although there was no evidence that the witness told the officers that he observed appellant operate the motor vehicle. Appellant also claims that she did not admit to driving the vehicle.

{¶ 60}  In addition, appellant submits that a police officer cannot execute a warrantless arrest for a misdemeanor offense when the officer does not personally observe the commission of the offense.  According to appellant, R.C. 2935.03(A) prohibits a police officer from arresting a person for a misdemeanor offense on the basis of hearsay evidence alone.  Thus, since the arresting officer did not have personal knowledge to form the belief that appellant was driving while under the influence of alcohol, appellant believes that the officer lacked probable cause to arrest.

{¶ 61}  As a general rule, a police officer may not make a warrantless arrest for a misdemeanor unless the offense is committed in the officer's presence.  R.C. 2935.03.  *State v. Frazier* (Oct. 6, 2000), 11th Dist. No. 99–T–0109, 2000 WL 1488364, at * 2; *Ravenna v. Hale* (June 16, 2000), 11th Dist. No. 99–P–0084, 2000 WL 777821, at * 2.  However, the Supreme Court of Ohio has carved out an exception to this statutory requirement.  In *Oregon v. Szakovits* (1972), 32 Ohio St.2d 271, 273, 61 O.O.2d 496, 291 N.E.2d 742, the court held that under certain circumstances, it is possible to have a valid warrantless arrest for operating a motor vehicle while under the influence of alcohol even though the arresting officer has not actually witnessed the suspect operating the vehicle.

{¶ 62}  Pursuant to *Szakovits,* the Supreme Court of Ohio has established three guidelines for evaluating DUI arrest when an officer has not observed the suspect driving.  First, " 'each "drunken driving" case is to be decided on its own particular and peculiar facts.' "  *Szakovits,* 32 Ohio St.2d at 273, 61 O.O.2d 496, 291 N.E.2d 742, quoting *Mentor v. Giordano* (1967), 9 Ohio St.2d 140, 146, 38 O.O.2d 366, 224 N.E.2d 343.  Second " '[c]hronology is an important element in "drunken driving" cases.  A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating [the] vehicle.' "  Id. at 273, 61 O.O.2d 496, 291 N.E.2d 742.  Third, " '[a]lthough a charge of operating a motor vehicle while under the influence of intoxicating liquor may apply where a stationary vehicle is involved, the evidence must show beyond a reasonable doubt that the accused was under the influence of intoxicat-

---

10.  The failure to *Mirandize* is not an issue on appeal.

ing liquor while operating the vehicle * * *.' " Id. at 273, 61 O.O.2d 496, 291 N.E.2d 742. Thus, "merely *appearing* to be too drunk to drive is not, in our opinion, enough to constitute probable cause for arrest." (Emphasis sic.) *State v. Finch* (1985), 24 Ohio App.3d 38, 40, 24 OBR 61, 492 N.E.2d 1254. See, also, *Frazier* at * 2; *Hale* at * 2.

{¶ 63} In analyzing DUI cases, this court has stated the following:

{¶ 64} " '[T]he weight of authority appears to be that where a police officer comes to the scene of an accident wherein there was no observable driving but *a suspect is found in or near the automobile with an odor of an alcoholic beverage on or about his person, there is probable cause to arrest the suspect for driving under the influence.'* " (Emphasis added.) *Mentor v. Woodside* (Feb. 6, 1998), 11th Dist. No. 97–L–046, 1998 WL 172811, at * 2, quoting *Fairfield v. Regner* (1985), 23 Ohio App.3d 79, 84, 23 OBR 144, 491 N.E.2d 333.

{¶ 65} "Thus, when a police officer arrives at the scene of an accident shortly after its occurrence, discerns an odor of alcohol on a suspect, and the suspect admits to having driven the vehicle, the police officer had probable cause to arrest that individual for driving under the influence." *Frazier* at * 3. See, also, *State v. Lyons* (June 11, 1999), 11th Dist. No. 97–P–0122, at * 3, 1999 Ohio App. LEXIS 2623, at 6.

{¶ 66} Since, Sergeant Veppert did not actually observe appellant driving, "according to [*Szakovits*], probable cause to arrest must be based upon all the facts and circumstances within his knowledge to cause a prudent person to believe that appellant committed the offense." *Frazier* at * 3. See, also, *Hale* at * 2; *Lyons* at * 6–7. Absent this, Sergeant Veppert could not effectuate a valid arrest.

{¶ 67} Furthermore, "[i]nformation supplied by officers or agencies engaged in a common investigation with an arresting officer may be used to establish probable cause for a warrantless arrest." *State v. Henderson* (1990), 51 Ohio St.3d 54, 554 N.E.2d 104, syllabus. As a result, we may consider not only those facts personally observed by Sergeant Veppert, but the information supplied by Trooper Doles to Sergeant Veppert in determining whether Sergeant Veppert had probable cause to arrest appellant for driving while under the influence of alcohol.[11]

{¶ 68} When Sergeant Veppert arrived at the scene, he observed the black Volvo parked on the berm and "a trail of fluid leading from the center of the three lanes going off and following and stopping right underneath the Volvo."

11. As an aside, we note that there is no evidence that Sergeant Veppert spoke with Djubasak prior to arresting appellant.

While at the scene, Sergeant Veppert was advised by Trooper Doles through a radio communication that a crash had occurred and that he had a witness who saw erratic driving.

{¶ 69}  Although appellant was approximately 200 feet away from the Volvo, she was within the vicinity of the vehicle.  While it is unclear from Sergeant Veppert's testimony whether appellant admitted to driving the vehicle, she told Sergeant Veppert that she was alone in the vehicle.  By stating that she was alone in the vehicle, appellant implicitly conceded that she had driven the vehicle.

{¶ 70}  As for being under the influence of alcohol, there was no question that appellant exhibited the classic indicia of intoxication at the time of the arrest.  Furthermore, the evidence indicates that Sergeant Veppert arrived at the scene within a short time after the accident occurred.  According to Trooper Doles, the estimated time of the accident was 3:55 p.m., and Sergeant Veppert arrived at the scene at approximately 4:06 p.m. Thus, there is a nexus regarding the relationship of events between the time appellant allegedly operated the vehicle and when she was found intoxicated.

{¶ 71}  Additionally, *Szakovits* requires the evidence to show beyond a reasonable doubt that the suspect operated the motor vehicle while intoxicated.  Not only did appellant smell of alcohol, her speech was slurred, she had difficulty keeping her balance, and she had to use the guardrail to support herself.  Appellant further admitted that she was alone in the vehicle, thereby conceding that she had driven the vehicle.  This satisfies the "beyond reasonable doubt" standard of *Szakovits*.

{¶ 72}  In light of these particular facts, it was reasonable for Sergeant Veppert to conclude that appellant had been operating the vehicle shortly before he arrived.  Accordingly, Sergeant Veppert had probable cause to arrest appellant for operating a vehicle while under the influence of alcohol, and the trial court properly denied appellant's motion to suppress.  Appellant's second assignment of error is without merit.

{¶ 73}  Based on the foregoing analysis, appellant's two assignments of error are meritless, and the judgment of the trial court is affirmed.

Judgment affirmed.

WILLIAM W. O'NEILL, P.J., and DONALD R. FORD, J., concur.