DECISION.
{¶ 1} Appellant Dorie Terrell appeals from her conviction and sentences on one count of complicity to aggravated murder and one count of complicity to aggravated robbery, violations of R.C. 2923.03(A)(2). The trial court imposed a sentence of twenty years to life on the aggravated-murder count, and the maximum ten-year sentence on aggravated-robbery count, finding it to be among the worst forms of the offense. The court ordered the two sentences to be served consecutively, for a total period of imprisonment of thirty years to life. Terrell presents three assignments of error, none of which we find to be well taken.
{¶ 2} On September 3, 2001, Danny White and his girlfriend, Billie Kay Jones, were staying at a Travelodge in Hamilton County. Jones and White testified that, shortly before midnight, they heard several gunshots fired outside the hotel. White went to the window and observed a heavy-set, African-American woman wiping down the passenger door of a car. White then saw the woman, who was wearing a pink, peach, or beige dress, run away from the scene. White immediately called the police.
{¶ 3} The police arrived at the hotel and found a deceased man lying next to a car in the parking lot. The police were later able to identify the victim as Ibrahima Diallo. A white pillowcase was found on the ground near the car, and Terrell's palm print was recovered from the passenger side of the car. The police searched two rooms at the hotel, and in room 224 they recovered a diaper bag, diapers, a pillow that was missing its pillowcase, and a soft-drink can bearing Terrell's fingerprint.
{¶ 4} A few weeks later, Anthony Mason contacted the F.B.I. Mason testified that, about a week after the homicide, Terrell had confessed to Mason that she had plotted with her brother to rob Diallo of his money and that she had aided her brother in the robbery of Diallo. According to Mason, Terrell had been staying at the Travelodge with her brother, his girlfriend, and a young child on September 3, and she and her brother had plotted to rob Diallo. The plan was that Terrell would prostitute herself with Diallo and that Terrell's brother would then come up to the car and rob Diallo. According to Mason, everything proceeded as planned until the brother pulled out a gun and started shooting Diallo. Apparently the brother approached the driver's door and said something to Diallo. Diallo, an African immigrant, was unable to understand him and did not respond. At that point, Terrell's brother began shooting Diallo. Diallo was shot five times. Mason testified that, after the shooting spree, Terrell did not know what to do, so she wiped her fingerprints off the car and ran away with her brother, the girlfriend, and the child. Terrell informed Mason that she received $1000 from the robbery and that they dumped the weapon and Diallo's identification in the Ohio River. Terrell told Mason that she then fled to Atlanta.
{¶ 5} After Mason contacted the police about his suspicions relating to Terrell's involvement in the homicide, the police questioned Terrell. Officer Darrin Hoderlein testified that Terrell admitted to staying at the Travelodge periodically, but said that she was out of town on the date of the homicide. She claimed that she had left for Atlanta on a Greyhound bus on September 1, but according to a Greyhound agent there was no record of Terrell obtaining a bus ticket on that date.
{¶ 6} According to the coroner, Daniel Schultz, Diallo was shot five times, all inflicting mortal wounds. Schultz testified that the wounds were consistent with Diallo sitting in the driver's seat of his car and being shot by someone at the driver's door. Schultz testified to a reasonable degree of medical certainty that Diallo had died of "perforation of the aorta and lungs due to gunshot wounds of the chest and left arm."
{¶ 7} Terrell testified that she had four children, and that the nine-year-old and the one-year-old had been living with her in 2001. She testified that she was a prostitute. Terrell testified that she had known Mason for ten years, that they had dated for eight of those years, and that for the last two years he had become her "pimp." She testified that she had recently stopped giving Mason part of her profits from prostituting. Terrell testified that she had stayed at the Travelodge for months at a time over the past year, but that she had moved out on September 2 for nonpayment of her rent. She admitted that she had gone to Atlanta on September 2 by a Greyhound bus, and that she had returned to Cincinnati to pay a possession-of-marijuana citation. She testified that she ran into Mason about one week after returning to Cincinnati and that they went to a motel and had sex but did not talk. She claimed that she did not see Mason after that time. She claimed that the rooms at the Travelodge were rarely cleaned and that while she had been in and out of a lot of the rooms at the hotel, she had not stayed in room 224 on September 3. She denied owning a pink dress. Terrell also denied meeting with Diallo on September 3; rather, she claimed that she had met Diallo a few days before September 3 and may have touched his car at that time.
{¶ 8} In the first assignment of error, Terrell challenges the weight of the evidence. While it is not specifically identified in the assignment itself, she also challenges the sufficiency of the evidence. Accordingly, we address both issues on appeal.
{¶ 9} When reviewing the sufficiency of the evidence to support a criminal conviction, we must examine the evidence admitted at trial in the light most favorable to the prosecution and determine whether such evidence could have convinced any rational trier of fact that the essential elements of the crime had been proved beyond a reasonable doubt.[1] In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of the witnesses, as both are functions reserved for the trier of fact.[2]
When reviewing the weight of the evidence, we must examine the entire record, weigh the evidence and all reasonable inferences, consider the credibility of the witnesses, and decide whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created a manifest miscarriage of justice.[3] A new trial should be granted only in exceptional cases where the evidence weighs heavily against conviction.[4]
{¶ 10} Terrell was convicted of aiding and abetting aggravated murder and of aiding and abetting aggravated robbery. As an accomplice, Terrell could be held criminally liable as if she was the principal offender and was criminally culpable to the same degree as the principal offender.[5] A person aids and abets another when she supports, assists, encourages, cooperates with, advises, or incites the principal in the commission of the crime, and shares the criminal intent of the principal.[6] Mere association with the principal offender or presence at the scene of a crime is not enough; rather, the state must establish that the offender "took some affirmative action to assist, encourage, or participate in the crime by some act, deed, word, or gesture."[7]
"Participation in criminal intent may be inferred from presence, companionship and conduct before and after the offense is committed."[8]
{¶ 11} In order to establish complicity to aggravated robbery in this case, the state had to show that Terrell had participated in inflicting or attempting to inflict serious physical harm on Diallo while a theft was committed. Specifically, R.C. 2911.01(A)(3) provides in relevant part, "No person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall do any of the following * * * (3) [i]nflict, or attempt to inflict, serious physical harm on another."
{¶ 12} Based on the record, we are persuaded that sufficient evidence was presented that Terrell participated in the aggravated robbery of Diallo and that she had the requisite criminal intent. The eyewitness testimony was that, late in the evening on September 3, 2001, Diallo was fatally shot in his car. The eyewitness also observed a woman, later identified by Mason as Terrell, wipe down Diallo's car and flee from the murder scene. Mason's testimony, if believed, was that Terrell had admitted to him that she had plotted to rob Diallo of his money with her brother. Mason further testified that Terrell had wiped down the crime scene, taken $1000 for herself, and, along with her brother and the girlfriend, disposed of the gun and Diallo's identification after the murder. Upon viewing the evidence in the light most favorable to the prosecution, we conclude that there was sufficient evidence to conclude that Terrell had aided and abetted in the planning and commission of the aggravated robbery of Diallo.
{¶ 13} In order to establish Terrell's complicity in the aggravated murder of Diallo, the state had to prove that Terrell had participated in the murder while acting with purpose to kill. As relevant here, R.C. 2903.01(B) defines aggravated murder as follows: "No person shall purposely cause the death of another * * * while committing or attempting to commit, or while fleeing immediately after committing or attempting to commit * * * aggravated robbery." A person acts purposely when he or she specifically intends to cause a certain result.[9] The intent of an accused dwells in his or her mind and can never be proved by direct testimony of a third person; rather it must be gathered from the surrounding facts and circumstances.[10] Intent may be inferred in certain circumstances. An aider and abettor's purpose to kill may be inferred where "the facts show that the participants in a felony entered into a common design and either the aider or abettor knew that an inherently dangerous instrumentality was to be employed to accomplish the felony, or the felony and the manner of its accomplishment would be reasonably likely to produce death." (Emphasis provided).[11]
{¶ 14} Here, the record contains evidence that Terrell participated in the planning of a robbery, and that during the actual robbery Diallo was killed. Further, sufficient evidence was presented that Terrell's participation in the aggravated robbery (which required a finding that she had been a complicitor in inflicting, or attempting to inflict, serious physical harm on Diallo) would have been reasonably likely to produce death. Thus, upon viewing the evidence in the light most favorable to the prosecution, we further conclude that a rational trier of fact could have found the essential elements of aiding or abetting another in the commission of aggravated murder proved beyond a reasonable doubt.
{¶ 15} Finally, we are unconvinced that the jury improperly weighed the evidence. The jury apparently found the testimony of the state's witnesses, including Billie Kay Jones, Danny White, Anthony Mason, Virginia Purdy, Angela Peavely, police officers, and the coroner, to be more credible than the testimony of Terrell and her sister (who testified that she had seen Terrell at their mother's home on the weekend of September 1 and 2). Because the weight to be given the evidence and the credibility of the witnesses were primarily for the trier of fact,[12] we cannot say that, as a matter of law, the jury improperly weighed the evidence. We therefore hold that the jury did not lose its way in finding Terrell guilty. Accordingly, we overrule Terrell's first assignment of error.
{¶ 16} In the second assignment of error, Terrell contends that the trial court erred in denying her motion to dismiss, which was premised on the denial of her right to a speedy trial.
{¶ 17} Reviewing a ruling on a motion to dismiss based upon a violation of the speedy-trial guarantees involves a mixed question of law and fact.[13] While due deference must be given to the trial court's findings of fact if they are supported by competent, credible evidence, we must independently review whether the trial court properly applied the law to the facts of the case.[14]
{¶ 18} It is uncontested that Terrell was arrested on October 10, 2001, and that she was to be tried ninety days later. Under the time period set forth in R.C. 2945.71(E), the state had to try Terrell by January 8, 2002. This did not occur.
{¶ 19} Where a defendant is not brought to trial within the speedy-trial limits, the burden rests with the state to provide evidence that the right to a speedy trial has not been violated.[15] Here, the state contends that Terrell's speedy-trial rights were not violated, because two continuances properly granted under R.C. 2945.72 extended the time for bringing Terrell to trial.
{¶ 20} At the hearing on the motion to dismiss, the trial court determined that the time between November 2, 2001, and January 2, 2002, requested in the first continuance should not be charged against the state because it came about with Terrell's agreement. But, giving Terrell the benefit of the doubt, the court decided to start running time against the state on December 21, 2001, credited Terrell with forty-nine days, and then added twenty-three days for January to find that the state had until February 26, 2002, to bring the case to trial. While we are unclear about how the trial court allocated the time, we hold that the court was correct when finding that Terrell's speed-trial rights had not been violated.
{¶ 21} Pursuant R.C. 2945.72(H), the time within which an accused must be tried may be extended by "[t]he period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion." A continuance must be journalized before the expiration of the time limits specified in R.C.2945.71.[16] Continuances granted on the state's motion or sua sponte by the trial court must be reasonable and necessary under the circumstances of the case.[17] The reasonableness of a continuance is determined by examining the purpose and the length of the continuance as specified in the record.[18] Where a continuance is granted to the defendant, however, the court does not have to provide an explanation for the continuance.[19]
{¶ 22} In this case, Terrell was to be brought to trial on January 8, 2002. Because the day of arrest did not count against the state, the speedy-trial clock began to run on October 11.[20] Twenty-three days had elapsed between the day after Terrell's arrest on October 10, 2001, and the date the joint motion to continue the case was granted on November 2, 2001. This time was properly chargeable to the state pursuant to R.C.2945.71.
{¶ 23} On November 2, 2001, a continuance was granted and the trial date was set for January 2, 2002, supposedly upon the request of both defense counsel and the prosecution. The purpose of the continuance indicated on the entry was simply noted as "trial." We have previously held that while the trial court need not identify the reason for granting the continuance in its journal entry because it should be clear to the defendant why she requested the continuance, the defendant's request for a continuance must at least be evidenced in the record so that we can determine whether the trial court properly charged the defendant with time resulting from the continuance.[21] The record in this case does not contain the joint request for a continuance or a transcript of the arguments in support of the motion. Further, the trial court did not indicate on the journal entry the reason for the continuance, and there was no speedy-trial waiver form placed of record. Although defense counsel and Terrell both signed the entry, without more in the record, we cannot be sure that the trial court properly charged Terrell with the continuance. Accordingly, the forty-nine days from November 2, 2001, until the second motion for a continuance was filed on December 21, 2001, should have been charged to the state.
{¶ 24} The second continuance granted on December 21, 2001, was prompted by the state's motion. The entry granting the continuance to February 11, 2002, stated that the trial date was to be continued to conduct DNA testing, which could be used either to exonerate Terrell or to help to prove her guilt. The state filed this motion eighteen days before the expiration of time under R.C. 2945.71. Based on the facts before the trial court, we hold that the court's granting of the state's continuance constituted a reasonable extension pursuant to R.C. 2945.72(H). The DNA testing was critical to determining whether to exonerate Terrell, and the delay was not unduly lengthy. Thus, this time should not have been charged to the state.
{¶ 25} The trial began on February 11, 2002. Because seventy-two days should have been charged to the state, which was under the ninety-day requirement in R.C. 2945.71(E), the trial court did not err when it denied Terrell's motion to dismiss based upon her right to a speedy trial. The second assignment of error is overruled.
{¶ 26} In the third assignment of error, Terrell maintains that the trial court erred in imposing maximum, consecutive sentences for the two offenses. She contends that, under R.C. 2953.08(A)(1)(b), she is entitled to a de novo review of the imposition of "maximum" sentences for both aggravated murder and aggravated robbery and the court's decision to run them consecutively.
{¶ 27} Terrell was found guilty of two counts of complicity, one involving aggravated murder and the other involving aggravated robbery, in violation of R.C. 2923.03(A)(2). Terrell, as a complicitor, had to be sentenced as if she were the principal offender for aggravated murder and aggravated robbery.[22]
{¶ 28} We first address the sentence imposed for aggravated murder in violation of R.C. 2903.01(B). At the outset we note that the general felony sentencing requirements do not apply in aggravated-murder cases; rather for sentencing in aggravated-murder and murder cases, the Ohio Revised Code establishes a special statutory scheme.[23] The sentencing statute clearly provides that where death is not imposed, a mandatory prison term must be imposed for aggravated murder.[24] R.C. 2929.02
governs penalties for murder, stating in pertinent part, "Whoever is convicted of or pleads guilty to aggravated murder in violation of section 2903.01 of the Revised Code shall suffer death or be imprisoned for life, as determined pursuant to sections 2929.022 [2929.02.2], 2929.03, and 2929.04 of the Revised Code."[25] When imposing a sentence for aggravated murder that does not contain one or more specifications of aggravating circumstances in R.C. 2929.04(A), the trial court shall impose the following sentence: "Except as provided in division (A)(2) of this section, the trial court shall impose a sentence of life imprisonment with parole eligibility after serving twenty years of imprisonment on the offender."[26] In this case, the aggravating circumstances listed in R.C. 2929.04(A) and 2929.03(A)(2) were not applicable. The trial court was, therefore, required to impose a life sentence with parole eligibility after twenty years.
{¶ 29} R.C. 2953.08 provides the ground upon which a defendant may appeal his or her sentence. Terrell maintains that we have jurisdiction to review the sentences imposed pursuant to R.C. 2953.08(A)(1)(b). R.C.2953.08(A)(1)(b) provides that a defendant may appeal as a matter of right the sentence imposed if (1) the sentence was the maximum prison term allowed for the offense by R.C. 2929.14(A), (2) the sentence was not imposed under R.C. 2929.14(D)(3)(b), (3) the maximum prison term was not required for the offense under Chapter 2925 or any other provision of the Revised Code, and (4) the court imposed the sentence for "two or more offenses arising out of a single incident, and the court imposed the maximum prison term for the offense of the highest degree."
{¶ 30} Here, the maximum prison term for the aggravated-murder conviction was not imposed under R.C. 2929.14(A), but rather it was mandated under R.C. 2929.02. R.C. 2953.08(D) specifically provides the following: "A sentence imposed upon a defendant is not subject to review under this section if the sentence is authorized by law, has been recommended jointly by the defendant and the prosecution in the case, and is imposed by a sentencing judge. A sentence imposed for aggravatedmurder or murder pursuant to sections 2929.02 to 2929.06 of the RevisedCode is not subject to review under this section." (Emphasis added). Thus, under R.C. 2953.08(D), we lack jurisdiction to review the imposition of the aggravated-murder sentence.[27]
{¶ 31} Some courts have found that despite the specific language in R.C. 2953.08(D), the trial court may, in certain circumstances, review aggravated-murder and murder sentences imposed by the trial court. For instance, the Twelfth Appellate District recently held that R.C. 2953.08(D) precludes appellate courts from reviewing the imposition of a sentence, but it does not preclude appellate review of the procedure the court used in determining the sentence for aggravated murder.[28] In that case, the court imposed the sentence without first weighing the aggravating circumstances and the mitigating factors. While the procedure the court used to impose an aggravated-murder sentence under R.C. 2929.02 may in fact be reviewable, this issue was not raised on appeal and we need not address it now.
{¶ 32} The Tenth Appellate District also recently held that R.C.2953.08(D) precludes appellate review of the imposition of consecutive murder sentences, but an appeal of the imposition of consecutive sentences on multiple murder charges might still exist based on traditional grounds.[29] While a traditional ground for reviewing the imposition of consecutive sentences may have existed prior to the 1996 amendments to the Revised Code, there were no traditional grounds on which to review aggravated-murder sentences because even before 1996 the general felony sentencing requirements did not apply in aggravated-murder cases.[30] As a result, we hold that, pursuant to R.C. 2953.08(D), Terrell's sentence for aggravated murder is not subject to review by this court under the felony sentencing guidelines found in R.C. 2929.12,2929.13, and 2929.14.
{¶ 33} Next we address Terrell's sentence for aggravated robbery. While we cannot review the sentence under R.C. 2953.08(A)(1)(b) as defense counsel suggests, it is nevertheless reviewable under R.C.2953.08(A)(4). Therefore, we consider whether the trial court's findings relating to the imposition of the maximum sentence for the aggravated-robbery charge were contrary to law.
{¶ 34} Aggravated robbery is a first-degree felony. To impose more than the shortest term for a first prison term, the trial court must make one of the findings listed in R.C. 2929.14(B). To impose the maximum sentence in this case, the trial court must have found, pursuant to R.C.2929.14(C), that Terrell either had committed the worst form of the offense, posed the greatest likelihood of recidivism, or was a repeat violent offender or a major drug offender. In addition to making the required findings, the trial court also had to state the reasons supporting those findings.[31]
{¶ 35} At the sentencing hearing and again on the sentencing worksheet, the trial court found that the shortest prison term demeaned the seriousness of the crime and did not adequately protect the public under R.C. 2929.14(B). When imposing the maximum term, the court found that Terrell had committed the worst form of the offense. Its reason for the maximum term was expressed in this way: "I don't know what could be worse, robbing and killing somebody." While the trial court could have better elaborated upon its reason, it did make the requisite findings and give a reason for its findings on the record. The imposition of the maximum term for aggravated robbery was, therefore, not contrary to law.
{¶ 36} Initially we note that while we may not review the actual sentence imposed for aggravated murder pursuant to R.C. 2953.08(D), nothing in R.C. 2953.08(D) precludes our review of whether the trial court followed the felony-sentencing guidelines under R.C. 2929.14(E) by ordering the sentence for aggravated robbery to be consecutive to the sentence for aggravated murder.[32] When ordering that the sentences be served consecutively, the trial court had to find that consecutive sentences were necessary to protect the public from future crime or to punish Terrell, and that consecutive sentences were not disproportionate to the seriousness of Terrell's conduct and to the danger that she posed to the public.[33] Further, the court had to find that one of the factors listed in R.C. 2929.14(E)(4)(a) through (c) was applicable. Finally, the court had to provide its reasons for each finding.[34]
{¶ 37} The trial court made the requisite findings both at the sentencing hearing and on the sentencing worksheet. The court found that "consecutive terms are necessary to protect the public and also to punish the defendant, not disproportionate to the seriousness of the defendant's conduct, [and] the danger the defendant poses to the public." The record reflects that the trial court also found that, pursuant to R.C.2929.14(E)(4)(a) and (b), Terrell was under community-control sanctions at the time she committed the offenses and that the harm caused was "so great or unusual that a single prison term is inadequate." Finally, the court provided the following reasons for making the sentences consecutive: Terrell was "on the lamb" (sic) from a warrant in Kentucky, and she had been "out of control" and had "behavior problems" when serving her probations. Accordingly, we conclude that the trial court did not err in imposing the maximum sentence for aggravated robbery and ordering that the sentences be served consecutively. We, therefore, overrule the third assignment of error and affirm the trial court's judgment.
Judgment affirmed.
Sundermann, P.J., Painter and Winkler, JJ.
[1] See State v. Thompkins, 78 Ohio St.3d 380, 386, 1997-Ohio-52,678 N.E.2d 541; State v. Jenks (1991), 61 Ohio St.3d 259, 574 N.E.2d 492, paragraph two of the syllabus, superseded by state constitutional amendment on other grounds in State v. Smith, 80 Ohio St.3d 89,1997-Ohio-335, 684 N.E.2d 668.
[2] See State v. Willard (2001), 144 Ohio App.3d 767, 777-778,761 N.E.2d 688.
[3] See State v. Thompkins, supra, at 387.
[4] See id.
[5] See State v. Moore (1985), 16 Ohio St.3d 30, 32-33,476 N.E.2d 355.
[6] See State v. Johnson, 93 Ohio St.3d 240, 2001-Ohio-1336,754 N.E.2d 796, syllabus.
[7] State v. Mootispaw (1996), 110 Ohio App.3d 566, 570,674 N.E.2d 1222.
[8] State v. Johnson, supra, at 245, quoting State v. Pruett (1971),28 Ohio App.2d 29, 34, 273 N.E.2d 884. See, also, State v. Mootispaw, supra.
[9] See R.C. 2901.22(A).
[10] See State v. Treesh, 90 Ohio St.3d 460, 2001-Ohio-4, 739 N.E.2d 749, at ¶ 59.
[11] State v. Scott (1980), 61 Ohio St.2d 155, 165, 400 N.E.2d 375,382, citing State v. Lockett (1976), 49 Ohio St.2d 48, 358 N.E.2d 1062, paragraphs three and four of the syllabus.
[12] See State v. DeHass (1967), 10 Ohio St.2d 230, 227 N.E.2d 212, paragraph one of the syllabus.
[13] See State v. High, 143 Ohio App.3d 232, 242,2001-Ohio-3530, 757 N.E.2d 1176.
[14] See id.
[15] See State v. Peirson, 149 Ohio App.3d 318, 2002-Ohio-4515,777 N.E.2d 296, at ¶ 16.
[16] See State v. Mincy (1982), 2 Ohio St.3d 6, 441 N.E.2d 571, syllabus.
[17] See R.C. 2945.72(H); State v. Saffell (1988), 35 Ohio St.3d 90,91, 518 N.E.2d 934; State v. Stamps (1998), 127 Ohio App.3d 219, 224,712 N.E.2d 762.
[18] See State v. Lee (1976), 48 Ohio St.2d 208, 210,357 N.E.2d 1095.
[19] See State v. Stamps, supra.
[20] See id. at 223.
[21] See id. at 225-226.
[22] See R.C. 2923.03(F).
[23] See State v. Hollingsworth (2001), 143 Ohio App.3d 562, 566,758 N.E.2d 713.
[24] See R.C. 2929.13(F)(1).
[25] R.C. 2929.02(A).
[26] R.C. 2929.03(A)(1).
[27] See State v. Hollingsworth, supra; State v. Brown (2001), 6th Dist. No. WD-00-33, State v. Johnson, 7th Dist. No. 99 C.A. 49, 2001-Ohio-3441.
[28] State v. Hancock (Mar. 31, 2002), 12th Dist. Nos. CA2001-12-115, CA2001-12-116, and CA2002-01004, 2003-Ohio-1616, ¶ 10.
[29] See State v. Steele (June 28, 2001), 10th Dist. No. 00AP-499. See, also, Griffin and Katz, Ohio Felony Sentencing Law (2001), Chapter 9, at T.9.14, 722-723.
[30] See State v. Hollingsworth, supra, at 569.
[31] See R.C. 2929.19(B)(2)(d); State v. Edmonson,86 Ohio St.3d 324, 328-329, 1999-Ohio-110, 715 N.E.2d 131.
[32] See State v. Broe (June 13, 2003), 1st Dist. No. C-020521.
[33] See R.C. 2929.14(E)(4).
[34] See R.C. 2929.19(B)(2)(c); State v. Edmonson, supra.