The STATE of Ohio, Appellant,

v.

HUMMEL, Appellee.

[Cite as *State v. Hummel,* 154 Ohio App.3d 123, 2003-Ohio-4602.]

Court of Appeals of Ohio,
Eleventh District, Portage County.

No. 2002–P–0060.

Decided Aug. 29, 2003.

124

Victor V. Vigluicci, Portage County Prosecuting Attorney, and Pamela J. Holder, Assistant Prosecuting Attorney, for appellant.

Robert W. Berger, for appellee.

---

CYNTHIA WESTCOTT RICE, Judge.

{¶ 1} The state appeals from the judgment of the Portage County Municipal Court, Ravenna Division, which granted appellee Albert H. Hummel's motion to suppress. We reverse.

{¶ 2} Based on the evidence presented at the suppression hearing, the trial court found that on November 14, 2001, Trooper Thomas Shevlin of the Ohio State Highway Patrol was dispatched to the scene of a motorcycle accident at the intersection of Highway 18 and State Route 44. When the trooper arrived at the scene, Hummel was being treated in the squad vehicle. His motorcycle was lying in the middle of the road. Trooper Shevlin spoke to Hummel, who went in and out of consciousness. While speaking with Hummel, Trooper Shevlin observed a strong odor of alcohol on Hummel, and that his speech was slurred and his eyes were glassy. Because of Hummel's serious head injuries, Trooper Shevlin did not administer any physical coordination tests.

{¶ 3} Trooper Shevlin investigated the accident and determined that Hummel had crashed his motorcycle and that no other vehicle had been involved in the accident. After investigating the scene of the accident, Trooper Shevlin went to Robinson Memorial Hospital, where Hummel was being treated. Trooper Shevlin asked Hummel to submit to a blood test, but Hummel refused. Trooper Shevlin arrested Hummel for driving under the influence in violation of R.C. 4511.19(A)(1) and failure to control in violation of R.C. 4511.202.

{¶ 4} Subsequently, Hummel entered pleas of not guilty to both charges and moved to suppress the stop and all evidence obtained as a result of the stop and detention. Hummel contended that the trooper lacked probable cause to arrest him for driving under the influence. At the suppression hearing, Trooper Shevlin testified that to his knowledge there was no erratic driving prior to the accident, no other vehicle was involved, Hummel did not give a statement, and no physical coordination tests were performed.

{¶ 5} The trial court granted Hummel's motion, holding:

{¶ 6} "*State v. Finch* (1985), 24 Ohio App.3d 38 [24 OBR 61, 492 N.E.2d 1254], states: 'Where a police officer had not observed the Defendant driving in an

erratic manner, had not witnessed physical coordination testing, the officer did not have probable cause to arrest based on the appearance of drunkenness based on odor, slurred speech and glassy eyes.' * * * 'It is not a violation of law to drive smelling of alcohol, or with bloodshot eyes or slurred speech, and appearing to be impaired is not enough to constitute probable cause to arrest.'

{¶ 7} "Here the evidence shows there was a serious accident and Defendant was seriously injured. Physical tests were not possible. No blood tests were taken.

{¶ 8} "The trooper's observation of the Defendant, i.e., slurred speech and glassy eyes, can be attributed to the serious head injuries of the Defendant."

{¶ 9} The state appeals, raising one assignment of error:

{¶ 10} "The trial court's decision suppressing the evidence of [a]ppellee's traffic stop and evidence obtained as a result of the stop is erroneous."

{¶ 11} When considering an appeal of a ruling on a motion to suppress, we review the trial court's findings of fact only for clear error and give due weight to inferences the trial judge drew from the facts. We must accept the trial court's factual determinations when they are supported by competent and credible evidence. We determine only whether the findings of fact were against the manifest weight of the evidence. *State v. Bokesch* (Apr. 30, 2002), 11th Dist. No. 2001–P–0026, 2002-Ohio-2118, 2002 WL 818874, ¶ 12–13. We review the trial court's application of law to those facts de novo and independently determine whether the facts meet the appropriate legal standard. Id. Here, the state does not challenge the trial court's findings of fact, only its application of those facts to the law.

{¶ 12} Hummel's motion challenged the probable cause for arrest. Therefore, we must first determine what constitutes probable cause. Probable cause is the standard for a constitutionally valid arrest. Courts have defined probable cause as "facts and circumstances 'sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *State v. Tibbetts* (2001), 92 Ohio St.3d 146, 153, 749 N.E.2d 226, quoting *Gerstein v. Pugh* (1975), 420 U.S. 103, 111–112, 95 S.Ct. 854, 43 L.Ed.2d 54, quoting *Beck v. Ohio* (1964), 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142. See, also, *Bokesch,* supra (probable cause exists if, "at the moment the citation was issued, 'the facts and circumstances within [the police officer's] knowledge and of which [he] had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the petitioner had committed or was committing an offense'").

{¶ 13} While this seems straightforward, there exists some confusion as to what quantum of evidence the state must show to establish probable cause to

arrest for driving under the influence where the officer has not observed the accused "operate"[1] the vehicle. We take this opportunity to try to alleviate this confusion and, to do so, we first discuss two Ohio Supreme Court cases where the operational element of the drunk-driving statute was in issue.

{¶ 14} In *Mentor v. Giordano* (1967), 9 Ohio St.2d 140, 38 O.O.2d 366, 224 N.E.2d 343, the court was confronted with a sufficiency-of-the-evidence argument when the arresting officer had not observed the accused operate the vehicle. The Supreme Court of Ohio reversed the conviction. The court held:

{¶ 15} "Although a charge of operating a motor vehicle while under the influence of intoxicating liquor may apply where a stationary vehicle is involved, the evidence must show beyond a reasonable doubt that the accused was under the influence of intoxicating liquor while operating the vehicle in that condition." Id. at paragraph three of the syllabus.

{¶ 16} In reaching its decision, the court stated:

{¶ 17} "Let us now examine the evidence and lack of evidence in the instant case. There was nothing to show that defendant had consumed any beverage other than beer in a moderate amount prior to the parking on the church grounds. Although he was sitting behind the steering wheel of the stationary vehicle, he was accompanied by three other persons, one of whom testified that he, and not defendant, had been driving the vehicle prior to parking. The vehicle was apparently parked in a normal manner. There is nothing to show whether intoxicants were consumed by defendant in the vehicle after the parking or that defendant would remain behind the steering wheel when the vehicle was set in motion. Several of the physical tests given defendant by the apprehending police officer were satisfactorily performed." Id. at 145–146, 38 O.O.2d 366, 224 N.E.2d 343.

{¶ 18} Thus, *Mentor* simply confirmed that, to obtain a conviction for drunk driving, the prosecution must prove beyond a reasonable doubt that the accused operated the vehicle while intoxicated.

{¶ 19} We now turn to *Oregon v. Szakovits* (1972), 32 Ohio St.2d 271, 61 O.O.2d 496, 291 N.E.2d 742, which raised the issue of probable cause to arrest where the officer had not observed the accused operate the vehicle. In *Oregon*, the court

---

1. {¶ a} R.C. 4511.19(A)(1), under which appellee was charged, provides that "[n]o person shall operate any vehicle, streetcar, or trackless trolley within this state, if any of the following apply:

{¶ b} "(1) The person is under the influence of alcohol, a drug of abuse, or alcohol and a drug of abuse * * *."

{¶ c} Thus, to obtain a conviction under this section, the prosecution is required to prove, beyond a reasonable doubt, that the accused operated a vehicle.

created an exception to the general rule that a police officer may not make a warrantless arrest for a misdemeanor unless the offense was committed in the officer's presence. R.C. 2935.03. See, also, *State v. Lewis* (1893), 50 Ohio St. 179, 33 N.E. 405.

{¶ 20} The appellants in *Oregon* were arrested for driving under the influence. On appeal, they claimed that their arrests were invalid because the arresting officers had neither observed their operation of the vehicles nor obtained a warrant. The Supreme Court of Ohio rejected this argument, holding that because the appellants had admitted operating their vehicles, the officers had probable cause to arrest even though they had not observed the appellants operating their vehicles. Id. at 273–274, 61 O.O.2d 496, 291 N.E.2d 742.

{¶ 21} *Mentor* and *Oregon* deal with distinct issues and, considered in this light, present no difficulties. The former confirmed that the state is required to prove, beyond a reasonable doubt, that the accused operated the vehicle; the latter created an exception to the rule for warrantless misdemeanor arrests. However, *Oregon* led to some confusion as to the standard for probable cause where the officer had not observed the accused operating the vehicle. This confusion results from the following quotation taken from *Mentor*:

{¶ 22} " 'Although a charge of operating a motor vehicle while under the influence of intoxicating liquor may apply where a stationary vehicle is involved, the evidence must show beyond a reasonable doubt that the accused was under the influence of intoxicating liquor while operating the vehicle in that condition.' " *Oregon* at 273, 61 O.O.2d 496, 291 N.E.2d 742, quoting *Mentor* at paragraph three of the syllabus.

{¶ 23} We, along with other courts, have interpreted this language from *Oregon* to require something more than what we traditionally view as "probable cause" where the officer has not observed the operation of the vehicle, i.e., the officer must have *proof beyond a reasonable doubt* that the accused operated the vehicle before the officer may make a warrantless arrest. For example, in *State v. Lyons* (June 11, 1999), 11th Dist. No. 97–P–0122, 1999 WL 417913, we held that *Oregon* established a three-part test to determine probable cause to arrest for driving under the influence where the officer has not observed the accused operate the vehicle:

{¶ 24} "First, each drunken driving case is to be decided on its own particular and peculiar facts. Second, [c]hronology is an important element * * *. A relationship must be established between the time there was evidence to show the influence of intoxicants and the time of operating a vehicle. * * * Third, [a]lthough a charge of operating a motor vehicle while under the influence of intoxicating liquor may apply where a stationary vehicle is involved, the evidence must show beyond a reasonable doubt that the accused was under the influence of

intoxicating liquor while operating the vehicle * * * " (Internal quotations omitted.)  Id. at *2, citing *Oregon.*[2]

{¶ 25}  However, a closer reading of *Oregon* shows that the court quoted paragraph three of the syllabus from *Mentor* and then distinguished it.  *Oregon* at 273, 61 O.O.2d 496, 291 N.E.2d 742.

{¶ 26}  In *Oregon,* the defendants admitted to operating their vehicles after being involved in accidents.  There was no such admission in *Mentor.*  In fact, the defendant in *Mentor* specifically denied driving the vehicle.  The court in *Oregon* stated, "After viewing the scene of the accident, and hearing appellants' admissions on a first hand basis, the officers could *reasonably*[3] conclude that each had been operating his vehicle shortly before the officers arrived."  (Emphasis and footnote added.)  Id. at 274, 61 O.O.2d 496, 291 N.E.2d 742.  *Oregon* quotes *Mentor* only to show that the defendants' admissions gave the officers sufficient reason to believe that the defendants had operated their vehicles, thus establishing an element of the offense.

{¶ 27}  *Oregon* confirmed that probable cause exists when the facts and circumstances known to the police officer and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused had committed or was committing an offense.  *Bokesch,* supra, at ¶ 13–14, citing *Oregon.*  In situations where the arresting officer has not observed the operation of the vehicle, such facts and circumstances would necessarily have to include a relationship between the time there was evidence to show the influence of intoxicants and the time of operation of the vehicle.  See *State v.*

---

**2.**  See, also, *State v. Pierson* (2002), 149 Ohio App.3d 318, 331, 777 N.E.2d 296 ("Additionally, [*Oregon*] requires the evidence to show beyond a reasonable doubt that the suspect operated the motor vehicle while intoxicated.  Not only did appellant smell of alcohol, her speech was slurred, she had difficulty keeping her balance, and she had to use the guardrail to support herself.  Appellant further admitted that she was alone in the vehicle, thereby conceding to the fact that she had driven the vehicle.  This satisfies the 'beyond a reasonable doubt' standard of [*Oregon*].");  *State v. Frazier* (Oct. 6, 2000), 11th Dist. No. 99–T–0109, 2000 WL 1488364, at 10–11 ("Additionally, *Oregon* requires the evidence to show beyond a reasonable doubt that the accused operated a motor vehicle while intoxicated.  Not only did appellant appear intoxicated, but he also had an odor of alcohol, he slurred his speech, he seemed unsteady on his feet, and he admitted that he had been drinking.  This satisfies the *Oregon* 'beyond a reasonable doubt' standard.  Therefore, pursuant to *Oregon,* we have examined the particular facts of this case and conclude that [the officer] had probable cause to arrest appellant for driving under the influence.").  See, also, *Ravenna v. Hale* (June 16, 2000), 11th Dist. No. 99–P–0084, 2000 WL 777821; *Warren v. King* (Mar. 31, 1999), 11th Dist. Nos. 98–T–0108 and 98–T–0119, 1999 WL 1483436; *Niles v. Spelich* (Mar. 4, 1994), 11th Dist. No. 93–T–4896, 1994 WL 110885.

**3.**  The use of the word "reasonably" is further evidence that *Oregon* does not heighten the probable-cause standard.  One can reasonably believe something to be true without having proof beyond a reasonable doubt that it is true.

*Henderson* (1990), 51 Ohio St.3d 54, 56, 554 N.E.2d 104 ("In *Oregon v. Szakovits* * * * we recognized an exception to this rule [against warrantless misdemeanor arrests] where the officer has probable cause to believe that the suspect was operating a motor vehicle while under the influence of alcohol or drugs.").

{¶ 28} While probable cause means more than bare suspicion, it means less than evidence that would justify conviction. *State v. Pelsue* (May 23, 1997), 11th Dist. No. 95–P–0149, 1997 WL 286174, quoting *United States v. Thomas* (C.A.6, 1993), 11 F.3d 620, 627; see, also, *State v. Losey* (Jan. 26, 1996), 11th Dist. No. 94–T–5169, 1996 WL 200569 ("However, just because probable cause may exist, this does not mean that the same quantum of evidence will suffice for a conviction."); *Westlake v. Vilfroy* (1983), 11 Ohio App.3d 26, 11 OBR 39, 462 N.E.2d 1241, at paragraph one of the syllabus ("The police officer's observations that defendant was lying on the grass, in the early morning hours, with the odor of alcohol on her breath, near a car that struck a utility pole, do not demonstrate the defendant's guilt beyond a reasonable doubt, but do provide probable cause for her arrest for operating a vehicle while under the influence of alcohol.").

{¶ 29} There is no sound reason why we should apply a different probable-cause standard to a drunk-driving arrest where the officer has not observed the operation of the vehicle than we apply to other offenses. To require proof beyond a reasonable doubt at the arrest stage of the criminal proceeding sets an impossibly high standard and one that is not mandated by either the United States or Ohio Constitutions. Therefore, to the extent our prior cases have held that in order to have probable cause to arrest for driving under the influence, the officer must have evidence to show beyond a reasonable doubt that the accused operated the vehicle, we overrule those cases. See *Lyons; Pierson; Frazier; Hale; King; Spelich,* supra.

{¶ 30} In accordance with the Supreme Court of Ohio's decision in *Oregon,* we confirm that a police officer has probable cause to arrest for driving under the influence where the facts and circumstances within the officer's knowledge and of which he has reasonably trustworthy information are sufficient to warrant a prudent man in believing that the accused had operated the vehicle while under the influence. In making this determination, each drunk-driving case must be decided on its own particular and peculiar facts. Applying this test to the instant case, it is clear that Trooper Shevlin had probable cause to arrest appellee for driving under the influence.

{¶ 31} Trooper Shevlin arrived at the scene of a single-vehicle accident. We have previously held, "when a police officer arrives at the scene of an accident shortly after its occurrence, discerns an odor of alcohol on a suspect, and the

suspect admits to having driven the vehicle, the police officer has probable cause to arrest that individual for driving under the influence." *Lyons* at 6.

{¶ 32} Further, the location of the vehicle may be prima facie evidence of erratic driving. See *Spelich,* supra, at 8; *State v. Leveque* (Sept. 30, 1993), 11th Dist. No. 92–L–208, 1993 WL 407255. In the instant case, the motorcycle was lying in the middle of the road. Although not prima facie evidence, this is some evidence of erratic driving.

{¶ 33} Upon speaking to Hummel, Trooper Shevlin detected a strong odor of alcohol. Hummel's eyes were glassy and his speech was slurred. In response to Trooper Shevlin's questions, Hummel stated that there were no passengers on the motorcycle, implicitly conceding that he had been driving the vehicle. See *State v. McKivigan* (Jan. 27, 1989), 11th Dist. No. 1905, 1989 WL 6111 ("Upon approaching the automobile [the officer] observed the appellant sitting in the driver's seat. The officer inquired if there was a problem, and appellant responded that he had run out of gas. While this answer is not tantamount to an express admission of driving, the fact that the colloquy between the trooper and the appellant did not reveal an alternate driver would permit a reasonable man to conclude that appellant was the driver of the automobile.").

{¶ 34} Based upon all of the information within Trooper Shevlin's knowledge at the time, i.e., a single-vehicle accident with no apparent explanation other than impaired control, the location of the vehicle, the strong odor of alcohol on appellee, appellee's slurred speech and glassy eyes, and the fact that appellee was still being treated at the scene, there was probable cause for the arrest. See, generally, *Oregon*; *Bernard*; *Regner,* supra; *State v. Conover* (1985), 23 Ohio App.3d 161, 23 OBR 403, 492 N.E.2d 464; *State v. Baker* (May 16, 1994), 12th Dist. No. CA93–09–170, 1994 WL 188599; *Lyons,* supra.

{¶ 35} The trial court found that appellee's slurred speech and glassy eyes could be attributed to his serious head injuries. However, probable cause is based upon the arresting officer's knowledge and perceptions existing at the time of the arrest. The unexplained accident, odor of alcohol, and slurred speech lead to a reasonable inference of probable cause. The actual cause of the accident or appellee's physical condition is relevant only to a defense to the charge. Those issues are more properly left for the trier of fact at trial to determine the relationship, if any, between appellee's injuries and the conditions observed by the arresting officer. See *State v. Kearney* (July 15, 1983), 11th Dist. No. 3177, 1983 WL 6077 ("The court found the testimony of the officer credible when he stated the defendant demonstrated poor coordination, slurred speech, bloodshot eyes and failure of the alphabet test. The appellant contended these characteristics were the result of the physical trauma of the accident rather than the effect

of alcohol. The court, however, could properly conclude the defendant was under the influence of alcohol at the time he was operating his car * * *.").

{¶ 36} The trial court erroneously relied on *State v. Finch* (1985), 24 Ohio App.3d 38, 24 OBR 61, 492 N.E.2d 1254, in reaching its decision that Trooper Shevlin lacked probable cause to arrest. In *Finch*, the Twelfth District Court of Appeals held:

{¶ 37} "Where a police officer had not observed the arrestee driving in an erratic or unsafe manner, had not witnessed impaired motor coordination, and had not instructed the arrestee to perform field sobriety tests, the officer did not have probable cause to arrest the driver * * *; the mere appearance of drunkenness (bloodshot eyes, slurred speech, the odor of alcohol) is not sufficient to constitute probable cause for arrest for driving under the influence." Id. at paragraph two of the syllabus.

{¶ 38} We have refused to apply *Finch* to cases where the accused has been involved in an accident. See, e.g., *State v. McFadden* (Apr. 3, 1998), 11th Dist. No. 97–L–139, 1998 WL 258409 ("In reaching our conclusion, we are aware of the cases cited by appellant stating that the mere appearance of drunkenness (bloodshot eyes, slurred speech, flushed face, the odor of alcohol) is insufficient to constitute probable cause to arrest for driving under the influence. See, e.g., *State v. Finch* (1985), 24 Ohio App.3d 38, 24 OBR 61, 492 N.E.2d 1254 * * *. However, unlike the facts presented in *Finch*, the combination of factors listed above, including the observance of appellant's vehicle mired in the mud at an accident scene, provided sufficient information * * * to effectuate appellant's arrest for drunk driving.").

{¶ 39} The instant case is factually distinguishable from *Finch*. There, the officer was notified that Finch had been involved in a fight, not an automobile accident. The officer went to the scene of the fight to investigate. As she arrived on the scene, Finch was driving away. The officer directed Finch to the side of the road. When the officer approached Finch's car she noticed that Finch exhibited many of the characteristics of someone who had been drinking heavily—bloodshot eyes, flushed face, and slurred speech. The officer removed Finch's keys from the car, thus, as the court of appeals found, placing him under arrest. Id. at 38–39, 24 OBR 61, 492 N.E.2d 1254. In spite of the fact that the officer had an opportunity to observe Finch's driving, she did not witness any erratic driving and there was no accident. Therefore, the court found that the officer lacked probable cause to arrest.

{¶ 40} More apposite to the determination of the instant case is our holding in *Lyons*, supra, and its predecessors. In *Lyons* we stated:

{¶ 41} "The weight of authority appears to be that where a police officer comes to the scene of an accident wherein there was no observable driving but a suspect is found in or near the automobile with an odor of an alcoholic beverage on or about his person, there is probable cause to arrest the suspect for driving under the influence." Id. at 3, quoting *Mentor v. Woodside* (Feb. 6, 1998), 11th Dist. No. 97–L–046, 1998 WL 172811.[4] See, also, *State v. Bernard* (1985), 20 Ohio App.3d 375, 20 OBR 481, 486 N.E.2d 866, at syllabus ("A one-vehicle accident with no apparent explanation other than impaired control of the vehicle by the driver is sufficient probable cause to warrant an arrest for a violation of R.C. 4511.19(A)(1) not committed in a law enforcement officer's presence.").

{¶ 42} Appellant's assignment of error has merit. We reverse the judgment of the Portage County Municipal Court, Ravenna Division, which granted appellee's motion to suppress and remand this matter to the trial court for proceedings consistent with this opinion.

Judgment reversed
and cause remanded.

JUDITH A. CHRISTLEY, J., concurs.

DIANE V. GRENDELL, J., dissents.

---

4. *Mentor* in turn quotes *Fairfield v. Regner* (1985), 23 Ohio App.3d 79, 23 OBR 144, 491 N.E.2d 333, which also involved an arrest following an accident.