OPINION
{¶ 1} This appeal arises from the Portage County Municipal Court, Kent Division, wherein appellant, Tracy L. Wooden ("Wooden"), appeals his conviction for resisting arrest.
 {¶ 2} The facts in this case were disputed at trial. Wooden presented the following facts. On May 7, 2002, Wooden was driving to a convenience store in Kent, Ohio, with his son, Marcus Moore, and his son's girlfriend, Hadiya Henry. According to Wooden, Marcus was driving while Hadiya was sitting in the front passenger seat and Wooden was sitting in the rear passenger seat. The car pulled into the store parking lot and Wooden exited the vehicle and entered the store. During this time, Officer Soika, an officer with the City of Kent Police Department, pulled his cruiser behind the vehicle and waited in the parking lot for Wooden to exit the store.
 {¶ 3} As Wooden exited the store, he was approached by Officer Soika, who told him that he saw him driving the car and he knew that his license was suspended. Wooden informed the officer that he had not been driving the car. Wooden then proceeded back into the store. Officer Soika then decided to arrest Wooden rather than issuing a citation. Wooden asked the officer to call for a backup officer as he was "afraid, based on past dealings with Officer Soika" and he thought the officer would attempt to plant drugs on him. However, Officer Soika opted to use pepper spray on Wooden while they were in the store. Officer Soika then radioed for backup. Officer Romanoski arrived at the scene, and Wooden then complied with the order to place his hands behind his back and was led out of the store and into the police cruiser.
 {¶ 4} The state presented different facts at trial. According to Officer Soika, while he was patrolling his district, he observed Wooden driving toward him on Fairchild Avenue in Kent, Ohio. As Wooden's vehicle passed the cruiser, Officer Soika and Wooden made eye contact. Officer Soika then noted that Wooden attempted to duck down to avoid detection. Officer Soika noted he had prior knowledge that Wooden's driver's license was suspended and he sought confirmation of that on his onboard computer. After confirming that Wooden's license was currently under three separate suspensions, Officer Soika turned around and followed the vehicle into the parking lot of the store.
 {¶ 5} Officer Soika noted that while Wooden's vehicle was in clear view, he observed Wooden exit the vehicle from the driver's seat and an individual, later identified as Wooden's son Marcus, jump from the back seat into the driver's seat. Officer Soika approached Wooden while he was outside the vehicle and stated, "[y]our driver's license is suspended. I saw you driving. You're going to get a ticket for driving under suspension." The officer testified that Wooden immediately became angry and began yelling at the officer. Officer Soika informed Wooden that he was writing a ticket for the offense and if Wooden did not comply he would be arrested. Wooden then ran into the store, yelling obscenities at the officer.
 {¶ 6} Both parties stipulated to the admission of the video surveillance tape from the store into evidence. The tape shows Officer Soika informing Wooden several times that he was under arrest. Wooden continued to behave in an irate fashion. Officer Soika then attempted to physically arrest Wooden. A brief struggle ensued, and Wooden evaded the officer's attempt to effectuate the arrest. Officer Soika ordered Wooden to stop resisting the arrest and warned that he would use a pepper spray. Wooden continued to resist, and Officer Soika used his pepper spray in an attempt to control Wooden. The spray was not effective, however, and Wooden continued to yell and behave in a belligerent fashion. As the videotape demonstrates, after the pepper spray proved ineffective, Wooden walked to the back of the store and continued to pace back and forth screaming that he was afraid of Officer Soika and he felt that he was being unfairly targeted.
 {¶ 7} As Wooden continued in this fashion, Officer Soika radioed for backup. A short time later, backup in the form of Officer Romanoski arrived. The officers were able to effectuate the arrest, and Wooden was escorted out of the store and into the police cruiser.
 {¶ 8} On May 8, 2002, a complaint was filed in the Portage County Municipal Court, Kent Division, charging Wooden with driving under suspension, a first-degree misdemeanor, and resisting arrest, a second-degree misdemeanor. Wooden entered a plea of not guilty to both charges at his arraignment on May 10, 2002. On October 18, 2002, Wooden filed a motion to suppress. A hearing on that motion was held on October 21, 2002, where the trial court found that the state established probable cause to stop and detain Wooden and the motion was overruled.
 {¶ 9} The matter proceeded to a jury trial on November 20, 2002. The jury ultimately returned a verdict of not guilty with respect to the charge of driving under suspension and a guilty verdict to the charge of resisting arrest. The matter was referred for a presentence investigation. On February 28, 2003, a sentencing hearing was held, whereby the trial court sentenced Wooden to the maximum sentence of ninety days in jail. Wooden's sentence was stayed pending appeal on March 11, 2003. Wooden presents three assignments of error on appeal. The first assignment of error is:
 {¶ 10} "The trial court committed prejudicial and reversible error when it overruled defendant's motion for a mistrial during the State's closing argument wherein the Prosecutor commented extensively on the defense strategy."
 {¶ 11} In his first assignment of error, Wooden contends that the trial court erred in failing to grant a mistrial based on comments made by the prosecution during closing argument, as those comments deprived Wooden of his right to a fair trial.
 {¶ 12} When allegations of prosecutorial misconduct are made, the reviewing court must determine whether the misconduct was improper and, if so, if the defendant was deprived a fair trial.[1] Counsel is generally given wide latitude in making closing arguments, and the remarks made by counsel must be examined in their entirety to determine whether they were prejudicial.[2]
 {¶ 13} Wooden takes issue with statements made by the prosecution during closing argument referring to the defense's strategy as a "red herring," intended to "throw [the jury] off track." Wooden contends that these statements were made only in an attempt to "denigrate defense counsel" and unduly prejudice Wooden, precluding his ability to get a fair trial. We disagree. The record demonstrates that the trial court instructed the jury that the evidence in the case did not include counsels' opening and closing statements. Furthermore, the prosecution's comments were not improper as they did not attack the defense strategy but, rather, were included as a review of the evidence put on by the defense. Those comments are permissible within the wide latitude granted counsel during closing arguments.
 {¶ 14} Moreover, as Wooden was ultimately not convicted of the driving under suspension charge, the prosecution's comments regarding defense strategy were not prejudicial, as it relates to that charge, as Wooden was acquitted of driving under a suspended license and only convicted of resisting arrest, a conviction supported by the record as noted infra.
 {¶ 15} Wooden has not demonstrated that the comments made by the prosecution during closing argument were either improper or prejudicial. Therefore, we conclude the trial court did not err in failing to grant a mistrial based upon those comments. Wooden's first assignment of error is without merit.
 {¶ 16} The second assignment of error is:
 {¶ 17} "The trial court abused its discretion and committed prejudicial error by not allowing the defense to elicit testimony regarding the motive, opportunity and bias of the officer regarding prior interactions with the defendant."
 {¶ 18} In his second assignment of error, Wooden contends the trial court erred by not allowing the defense to elicit testimony regarding past interactions between Officer Soika and Wooden. Specifically, Wooden argues that a history of animosity existed between himself and Officer Soika and that animosity was the underlying reason for the current arrest.
 {¶ 19} "A party may not predicate error on the exclusion of evidence during the examination in chief unless two conditions are met: (1) the exclusion of such evidence must affect a substantial right of the party and (2) the substance of the excluded evidence was made known to the court by proffer or was apparent from the context within which questions were asked."[3]
 {¶ 20} Thus, in order to assign as error on appeal the exclusion of evidence during the examination in chief, Wooden must establish that the exclusion of the evidence affected a substantial right, and that a proffer of the evidence was made or the substance of the excluded testimony was evident from the context of the questions.
 {¶ 21} We conclude that Wooden has not demonstrated error on appeal, as he has not met either requirement. First, we conclude that Wooden has not demonstrated that the exclusion of testimony regarding past interactions between himself and Officer Soika has affected a substantial right, as he was not ultimately convicted of driving under a suspended license, but only of resisting arrest. Evidence of animosity between Wooden and Officer Soika may have been relevant had Wooden been convicted of driving under a suspended license to demonstrate that the stop and arrest were pretextual in nature. However, the jury ultimately found Wooden's testimony credible at trial and did not convict him of that offense. As noted infra, the jury did convict Wooden of resisting arrest, which is supported by the evidence in the record.
 {¶ 22} Second, Wooden concedes that he did not make the substance of the testimony known to the court by a proffer at trial. Rather, Wooden contends that the substance of the testimony is evident through the context of the questions asked at trial. Specifically, he states that questions posed to Ms. Barr, Wooden's neighbor, demonstrated an attempt by the defense to establish a preexisting animosity between Wooden and Officer Soika. We disagree. In order to adequately assign as error on appeal the exclusion of testimony by the trial court in the instant case, the defense needed to proffer that testimony. Without such, this court cannot glean from the record exactly what specific testimony the defense attempted to elicit.
 {¶ 23} Thus, as Wooden has not established either condition set forth in Gilmore, we conclude that the trial court did not err in prohibiting the defense to elicit testimony regarding past interactions between Officer Soika and Wooden. Wooden's second assignment of error is without merit.
 {¶ 24} The third assignment of error is:
 {¶ 25} "The verdict of the jury in the case sub judice was against the manifest weight of the evidence adduced at trial and contrary to law."
 {¶ 26} "`In determining whether the verdict was against the manifest weight of the evidence, "* * * the court reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'"[4]
 {¶ 27} A judgment of the trial court should be reversed as being against the manifest weight of the evidence in only the most exceptional cases where the evidence weighs heavily against a conviction.[5] Moreover, the weight to be given the evidence and the credibility of the witnesses are for the trier of fact to decide.[6]
 {¶ 28} Wooden challenges his conviction for resisting arrest. Resisting arrest is codified under R.C. 2921.33(A), which provides: "[n]o person, recklessly or by force, shall resist or interfere with a lawful arrest of the person or another." Recklessly is defined as:
 {¶ 29} "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist."[7]
 {¶ 30} As noted in the statute, an element for the offense of resisting arrest is that the underlying arrest is lawful.[8] In the instant case, the trial court provided the following jury instruction regarding a lawful arrest:
 {¶ 31} "The State must prove the arrest was in the process of taking place when the resistance or interference occurred. You must also decide whether or not the arrest was lawful. An arrest is lawful if the offense for which the arrest was being made was one for which the Defendant could be arrested and the arresting officer had the authority to make the arrest at the time and place where the alleged resistance or interference took place and a reasonable officer, under the facts and circumstances in evidence, would have believed that the elements of driving under suspension had been committed by the Defendant."
 {¶ 32} However, the state need not prove that the defendant was guilty of the offense for which the arrest is made to uphold a subsequent conviction for resisting arrest.[9] The arresting officer must only have probable cause to believe that the defendant's conduct, for which the arrest is being made, amounted to an offense.[10]
 {¶ 33} Probable cause for an arrest exists if reasonable, trustworthy facts and circumstances within the arresting officer's knowledge would warrant a person to believe that the suspect had committed or was committing an offense.[11]
While probable cause means more than bare suspicion, it means less than evidence which would be required to justify a conviction.[12]
 {¶ 34} In the instant case, Officer Soika testified that he saw Wooden driving the vehicle, and the two "locked eyes" as Wooden's vehicle and Soika's police cruiser passed each other. Officer Soika also testified that, although he knew Wooden's license was suspended, he confirmed that via his onboard computer. Thus, at that point, Officer Soika had probable cause to stop Wooden for driving under a suspended license. Once Officer Soika approached Wooden and notified him that he was going to issue a ticket for driving with the suspended license, Wooden became upset and began yelling at the officer. Officer Soika informed Wooden that he would place him under arrest if he did not cooperate. Wooden continued his tirade and ran into the convenience store.
 {¶ 35} Both parties stipulated to the video surveillance footage from inside the convenience store being admitted into evidence at trial. Although the tape is not of the best visual quality, Wooden's conduct while Officer Soika attempted to effectuate the arrest can be seen and clearly heard. Officer Soika repeatedly told Wooden he was placing him under arrest, and Wooden continued yelling at the officer. The officer then attempted to physically restrain Wooden to place him in handcuffs, but Wooden struggled and broke free. Wooden continued even after Officer Soika used pepper spray to try and subdue him. Finally, Officer Soika radioed for backup in order to effectuate the arrest.
 {¶ 36} In reviewing the record and evidence presented at trial in its entirety, it is clear that Officer Soika had probable cause to arrest Wooden for driving under a suspended license, as he testified that he saw Wooden driving the vehicle and he confirmed that Wooden's license was under three separate suspensions. When Officer Soika approached Wooden about the driving, the situation escalated to one in which Wooden was highly combative and not compliant with any orders given.
 {¶ 37} Therefore, pursuant to Schlee, in reviewing the evidence and credibility of the witnesses, we conclude that Wooden's resisting arrest conviction was not against the manifest weight of the evidence. Wooden's third assignment of error is without merit.
 {¶ 38} Based on the foregoing, Wooden's assignments of error are not well-taken and the judgment of the Portage County Municipal Court, Kent Division, is affirmed.
Christley, J., Grendell, J., concur.
[1] State v. Fears (1999), 86 Ohio St.3d 329, 332.
[2] State v. Carter (2000), 89 Ohio St.3d 593, 603.
[3] State v. Gilmore (1986), 28 Ohio St.3d 190, syllabus.
[4] (Citations omitted and emphasis in original.) State v.Schlee (Dec. 23, 1994), 11th Dist. No. 93-L-082, 1994 Ohio App. LEXIS 5862, at *14-15.
[5] State v. Thompkins (1997), 78 Ohio St.3d 380, 387.
[6] State v. DeHass (1967), 10 Ohio St.2d 230, paragraph one of the syllabus.
[7] R.C. 2901.22(C).
[8] R.C. 2921.33; State v. Boyle, 2004-Ohio-1531, at ¶ 32.
[9] State v. Namey (Oct. 6, 2000), 11th Dist. No. 99-A-0003, 2000 Ohio App. LEXIS 4652, at *10, citing Warren v. Patrone
(1991), 75 Ohio App.3d 595, 599.
[10] Id.
[11] (Citations omitted.) State v. Hummel,154 Ohio App.3d 123, 2003-Ohio-4602, at ¶ 12.
[12] (Citations omitted.) State v. Pelsue (May 23, 1997), 11th Dist. No. 95-P-0149, 1997 Ohio App. LEXIS 2245, at *8.