OPINION
{¶ 1} Appellant, Sarah M. Perl, pleaded no contest to operating a vehicle in excess of the posted speed limit in violation of R.C. 4511.21(C) and operating a motor vehicle while under the influence of alcohol in violation of R.C.4511.19(A)(1)(a). Appellant was found guilty of both violations by the Painesville Municipal Court. Prior to the plea, appellant had filed a motion to suppress/motion to dismiss on March 31, 2006. The trial court denied the motion in part and granted the motion in part. Appellant appeals the denial of the remaining portion of appellant's motion to suppress. For the reasons that follow, we affirm.
 {¶ 2} Appellant's motion to suppress/motion to dismiss was based on the argument that the stop, detention and arrest of appellant was without probable cause and in violation of appellant's Fourth and Fourteenth Amendment rights. A hearing on appellant's motion to suppress was held at the trial court on April 3, 2006. At the hearing, Trooper Kevin Harris, Ohio State Highway Patrol, testified that on February 17, 2006 at approximately 1:00 in the morning, he was driving west on Route 84 when he observed a vehicle traveling east at what he perceived to be a high rate of speed. Trooper Harris used his radar equipment and clocked the vehicle driving at 48 miles per hour in a 35 mile per hour zone.[1] Based on these observations, Trooper Harris initiated a traffic stop of the vehicle.
 {¶ 3} The trooper further testified that during his initial contact with the driver, appellant herein, the trooper detected a "strong odor of alcohol." Appellant exited the vehicle upon the trooper's request. Trooper Harris informed appellant that he detected an odor of alcohol. At that point, appellant admitted to Trooper Harris that she had consumed "three beers and a shot" that evening.
 {¶ 4} The trooper then conducted a series of field sobriety tests; namely the Horizontal Gaze Nystagmus (HGN), the one-leg-stand and the walk-and-turn tests. As to the HGN, the trooper testified that he was familiar with the National Highway Traffic Safety Administration (NHTSA) standards and identified exhibit three as the written compliance standards and methods for the HGN. However, on cross-examination, the trooper could not identify the standards for the HGN test, although he maintained that he had substantially complied with those standards.
 {¶ 5} The trooper also identified exhibits one and two, the NHTSA standards for the other tests. However, these exhibits were never admitted into evidence. Trooper Harris described the requirements of the NHTSA and testified that he complied with those standards when directing appellant to perform the three field sobriety tests. According to the trooper, appellant failed each of the three tests. Trooper Harris testified on cross-examination that he substantially complied with the NHTSA standards for the one-leg-stand test by demonstrating to appellant how to perform the test. He also testified that he complied with NHTSA standards for the walk-and-turn test by demonstrating the test through five steps even though the test requires nine steps.[2] Trooper Harris testified he advised appellant she would be required to take nine steps as opposed to his five steps of demonstration.
 {¶ 6} At the close of the suppression hearing, the court found that there was sufficient evidence to stop appellant for speeding. The court also found that the trooper had substantially complied with the field sobriety test standards, with the exception of the HGN test. Therefore, the court granted the motion to suppress in regard to the HGN test and overruled the motion as to the additional evidence.
 {¶ 7} Appellant's single assignment of error is:
 {¶ 8} "[1.] BASED ON THE TESTIMONY OF THE TROOPER AT THE HEARING, THE TRIAL COURT ERRED IN ITS FAILURE TO GRANT THE APPELLANT'S MOTION TO SUPPRESS THE EVIDENCE AND DISMISS THE CASE."
 {¶ 9} We review a ruling on a motion to suppress giving due deference to the trial court's assignment of weight and inferences drawn from the evidence. State v. Hummel,154 Ohio App.3d 123, 2003-Ohio-4602, at ¶ 11. "We must accept the trial court's factual determinations when they are supported by competent and credible evidence." Id. However, we review the application of the law to those facts pursuant to a de novo standard. Id.
 {¶ 10} Appellant claims that the initial stop of her vehicle was a "fishing expedition" and was not based on legally sufficient facts to justify an investigatory stop. "The investigative stop exception to the Fourth Amendment warrant requirement allows a police officer to stop an individual if the officer has a reasonable suspicion, based upon specific and articulable facts, that criminal behavior has occurred or is imminent." State v. Gedeon (1992), 81 Ohio App.3d 617, 618, see, also, Terry v. Ohio (1968), 392 U.S. 1. Appellant is correct that investigatory stops based on "hunches" are invalid stops as they are not based on articulable facts. State v.Rucker (1990), 63 Ohio App.3d 762. However, there is nothing in the record to support appellant's contention that the initial traffic stop of appellant's vehicle was based on the hunch of Trooper Harris that something foul was afoot. On the contrary, the testimony at the suppression hearing showed that Trooper Harris observed appellant's vehicle traveling at a perceived high rate of speed which was then confirmed by a properly calibrated radar instrument.[3] Observation of traffic violations extend beyond an investigatory stop; they constitute probable cause. "[W]hen a police officer witnesses a motorist in transit commit a traffic violation, the officer has probable cause to stop the vehicle for the purpose of issuing a citation." Statev. Teter (Oct. 6, 2000), 11th Dist. No. 99-A-0073, 2000 Ohio App. LEXIS 4656, 10; see, also, State v. Graham, 11th Dist. No. 2005-P-0096, 2006-Ohio-4184, at ¶ 15. Therefore, we conclude that the initial stop of appellant's vehicle was lawful.
 {¶ 11} During his initial contact with appellant, Trooper Harris noted that she had red and bloodshot eyes. There was no notation of slurred speech. Trooper Harris requested appellant exit the vehicle. She complied and indicated to the trooper that she had consumed "three beers and a shot" that evening.
 {¶ 12} Trooper Harris then proceeded to administer the field-sobriety tests. Appellant challenged the administration of these tests. Specifically, appellant asserts on appeal that the prosecution's failure to admit the NHTSA manuals as exhibits was a fatal flaw. During the prosecution's case-in-chief, Trooper Harris identified the NHTSA manual for each field-sobriety test. These manuals were provided to the trooper in the form of exhibits one, two and three. There was no objection to these exhibits, however, they were not admitted into evidence.
 {¶ 13} Appellant compares these facts to those present inState v. Brown, 166 Ohio App.3d 638, 2006-Ohio-1172, wherein this court reversed the trial court's denial of a motion to suppress. We conclude the facts sub judice are not on the same page with the facts present in Brown.[4] First, unlike inBrown, Trooper Harris did identify the NHTSA manual. Second, Trooper Harris explained the requirements of the NHTSA as it relates to the administered tests. Third, Trooper Harris did testify that he substantially complied with the standards of the NHTSA in administering the tests.[5]
 {¶ 14} More importantly, appellant does not challenge the administration of the field-sobriety tests on appeal as noncompliant with the NHTSA standards. Rather, appellant challenges the demonstration procedures utilized by Trooper Harris in preparation for the administration of these tests. Specifically, appellant challenges the trooper's five-step demonstration of the walk-and-turn test as opposed to the nine-step requirement for the actual test. Trooper Harris testified that although he only demonstrated five steps for appellant, he advised her that in order to complete the test, she would need to perform nine steps. R.C. 4511.19 requires that the administration, not the demonstration, of field-sobriety tests be conducted in substantial compliance with the NHTSA standards.[6] See, R.C. 4511.19(D)(4)(b).
 {¶ 15} Appellant takes issue with the fact that Trooper Harris failed to bring his radar certification with him to the suppression hearing. Appellant cites no proper authority for this argument. Trooper Harris did testify that he was certified to use the Python radar, the same radar in the patrol car. Furthermore, we note that appellant did not raise a radar certification issue in her motion to suppress/motion to dismiss. "A motion to suppress must state its legal and factual bases with sufficient particularity to notify the prosecutor and the court of the issues to be decided." State v. Duncan, 11th Dist. No. 2004-L-065, 2005-Ohio-7061, at ¶ 17. Furthermore, a review of the record shows that appellant's counsel did not raise an objection to the trooper's radar qualifications at trial. Certainly, counsel questioned the trooper regarding the certification on cross-examination, yet failed to lodge a complaint that he was not qualified. During this line of questioning, the trooper stated that he was certified on the same type of equipment that was used in the underlying case. In addition, there is no evidence that appellant subpoened the certification from the trooper. Therefore, the trooper was not required to bring any documentation with him to the suppression hearing.
 {¶ 16} Appellant's single assignment of error is without merit.
 {¶ 17} For the reasons stated in the Opinion of this court, the assignment of error is not well taken. It is the judgment and order of this court that the judgment of the Painesville Municipal Court is affirmed.
Donald R. Ford, P.J., concurs, Colleen Mary O'Toole, J., concurs in judgment only.
[1] Trooper Harris also testified that he had calibrated the radar instrument at the beginning of his shift that evening. According to the trooper, the calibration revealed the equipment was functioning properly.
[2] During the suppression hearing, a videotape was played which depicted a portion of the field sobriety tests conducted on appellant as well as the trooper's demonstration.
[3] The trooper testified at the hearing that he was certified to conduct calibration checks on the radar equipment used in this instance. He further testified that he had calibrated this specific instrument at the beginning of his shift. According to the trooper, the calibration revealed the instrument "* * * passed internal function and tuning fork * * *."
[4] Likewise, the facts in the underlying case are also distinguishable from State v. Nickelson (July 20, 2001), 6th Dist. No. H-00-036, 2001 Ohio App. Lexis 3261. The facts inNickelson are akin to those present in Brown where there was no testimony whatsoever regarding the NHTSA standards or compliance with those standards.
[5] We confine our review of appellant's assignment of error to the trial court's denial of the motion to suppress and therefore do not address the trial court's decision to grant appellant's motion to suppress as to the HGN test.
[6] Actually, appellant argues throughout her brief that strict compliance is the required standard for administration of field sobriety tests. As we stated in Brown, supra, R.C. 4511.19 was amended effective April 9, 2003 and no longer requires strict compliance. Rather, the proper standard is substantial compliance.