OPINION
{¶ 1} Appellant, Angelique M. Bauerle, a.k.a. Angelique M. Fruitkin, appeals from the March 30, 2007 judgment entry of the Lake County Court of Common Pleas, in which she was sentenced for attempted vehicular assault and operating a vehicle under the influence of alcohol ("OVI"). *Page 2 
 {¶ 2} On September 1, 2006, appellant was indicted by the Lake County Grand Jury on five counts: count one, aggravated vehicular assault, a felony of the third degree, in violation of R.C. 2903.08(A)(1)(a); count two, vehicular assault, a felony of the fourth degree, in violation of R.C. 2903.08(A)(2)(b); count three, OVI, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(d); count four, OVI, a misdemeanor of the first degree, in violation of R.C. 4511.19(A)(1)(a); and count five, endangering children, a misdemeanor of the first degree, in violation of R.C. 2919.22(C)(1). On September 22, 2006, appellant filed a waiver of her right to be present at the arraignment and the trial court entered a not guilty plea in her behalf.
 {¶ 3} Appellant filed two motions to suppress. The first was filed on November 22, 2006, and the second on December 14, 2006. Appellee, the state of Ohio, filed a response on January 4, 2007.
 {¶ 4} A suppression hearing commenced on January 12, 2007.
 {¶ 5} At that hearing, testimony revealed that on April 5, 2006, at around 8:00 p.m., appellant's vehicle was stopped at a red light at the intersection of Euclid Avenue and Robinhood Drive, in Willoughby, Lake County, Ohio. Appellant was in the curb lane on Euclid Avenue, a five lane road with a crosswalk of approximately eighty feet. While appellant was stopped at the red light, a pedestrian, Anna Tucker ("Tucker"), was crossing the street in the crosswalk. When the light turned green, appellant forged ahead striking Tucker.
 {¶ 6} Patrolman Michael Fitzgerald ("Patrolman Fitzgerald") and Lieutenant Jack Beckwith ("Lieutenant Beckwith"), with the Willoughby Police Department, were dispatched to the scene. The police investigation revealed that the road conditions *Page 3 
were dry, the road contour was straight and level, and the lighting from both the streetlights and nearby shopping center was adequate. Also, traffic was pretty heavy during the time of the accident.
 {¶ 7} Patrolman Fitzgerald interviewed several witnesses. They observed Tucker crossing in the crosswalk and indicated that while she was crossing, the traffic light turned from red to green. Patrolman Fitzgerald, who testified for appellee, attempted to talk with appellant, but stated she was crying and kept talking to someone on her cell phone. Finally, he asked appellant to sit in the back seat of his cruiser. She complied. During their conversation, Patrolman Fitzgerald testified that appellant said that she did not notice Tucker until it was too late. She then slammed on her brakes and struck Tucker. At that point, Patrolman Fitzgerald smelled a moderate odor of an alcoholic beverage coming from the back seat of his car. He asked her if she had been drinking. Patrolman Fitzgerald said that appellant replied she had one drink with her dinner, and later stated that the drink was gin.
 {¶ 8} Patrolman Fitzgerald asked appellant to perform field sobriety tests. She asked if she could call her husband, Attorney Harvey Fruitkin. Patrolman Fitzgerald permitted appellant to call him. Following their phone conversation, appellant stated she would not perform field sobriety tests, but that she would take a breathalyzer test. Patrolman Fitzgerald explained to her that under that condition, he would have to place her under arrest. He asked her several more times if she would take field sobriety tests, indicating to her that if she did well, she would be sent on her way. She responded that she would not take the tests. He again told her that he would have to arrest her and she said, "`Do what you have to do.'" *Page 4 
 {¶ 9} Patrolman Fitzgerald placed appellant under arrest and transported her to the station. At the station, he explained to appellant that there was an observation period prior to taking the BAC DataMaster test. Lieutenant Beckwith observed her in the BAC room. Appellant's husband was permitted in the BAC room. Neither Patrolman Fitzgerald nor Lieutenant Beckwith saw appellant chewing gum or remove anything from her purse prior to the test. Appellant was asked if she had anything in her mouth, to which she responded that she did not. She requested a cigarette, and was told on several occasions that she was not allowed to have anything in her mouth because that would invalidate the test results.
 {¶ 10} After appellant and her husband were informed of the results, they were escorted to the garage so that she could smoke a cigarette. Patrolman Fitzgerald testified that while in the garage, she laughingly told him, "`I had chewing gum in my mouth. It's going to render the test invalid.'" At that point, Patrolman Fitzgerald observed appellant chewing gum.
 {¶ 11} On cross-examination, Patrolman Fitzgerald stated that appellant was polite and cooperative, was not confused, did not slur her words, did not have trouble walking, and her clothes were in order. He indicated that he inadvertently skipped over the section in the police report regarding what first led him to suspect the influence of alcohol.
 {¶ 12} On re-direct examination, Patrolman Fitzgerald said that appellant had bloodshot eyes.
 {¶ 13} John Kucmanic ("Kucmanic"), a forensic toxicologist with the Ohio Department of Health, testified for appellee regarding the effects of chewing gum with *Page 5 
respect to a breath alcohol test. Kucmanic concluded that chewing gum does not cause the increase in the amount of alcohol over a period of time with respect to the regulations on the BAC. He indicated that it does not matter if something is in one's mouth as long as it was not put in one's mouth during the twenty minute observation period.
 {¶ 14} Lieutenant Beckwith testified for appellee that he was responsible for administering the breath test. While in the BAC room with appellant, he asked her if she had anything in her mouth, and she replied that she did not. Lieutenant Beckwith stated that he never left the room during the observation period, and did not see appellant chewing gum. Appellant's husband was in the room during the test, and asked Lieutenant Beckwith if appellant could have a cigarette. Lieutenant Beckwith said that she could not because if she had anything in her mouth during the observation period prior to the test, it would invalidate the results.
 {¶ 15} Following the hearing, on January 19, 2007, the trial court denied appellant's motions to suppress.
 {¶ 16} On February 27, 2007, appellant withdrew her former not guilty plea and entered an oral and written plea of no contest to count two, attempted vehicular assault, a felony of the fifth degree, and count three, OVI, a misdemeanor of the first degree. In its March 1, 2007 judgment entry, the trial court accepted appellant's no contest plea and entered a nolle prosequi on the remaining counts.
 {¶ 17} Pursuant to its March 30, 2007 judgment entry, the trial court sentenced appellant to two years of community control, which included ninety days in jail on count two, with credit for one day of time served; house arrest for ninety days on count two; *Page 6 
thirty days in jail on count three, with credit for one day of time served, to be served concurrent with the sentence imposed in count two. Appellant was granted work release privileges; was ordered to be evaluated at the Lake/Geauga Center for Alcoholism and Drug Abuse; was ordered to attend one Alcoholics Anonymous meeting per week; was not to have any involvement with drugs or alcohol and was to submit to periodic screens for drugs and alcohol; was to maintain full time employment; ordered to complete one hundred hours of community service; and to pay a mandatory fine in the amount of $250 and costs. The trial court also suspended appellant's driver's license for one year. It is from the foregoing judgment that appellant filed a timely notice of appeal and makes the following assignments of error:
 {¶ 18} "[1.] The trial court committed reversible error by finding [appellee] had probable cause to arrest appellant and by not suppressing the results of the breathalyzer when the test was not conducted in compliance with the regulations.
 {¶ 19} "[2.] Whether the appellant's due process rights were violated due to ineffective assistance of counsel."
 {¶ 20} In her first assignment of error, appellant argues that the trial court erred by finding appellee had probable cause to arrest her and by not suppressing the results of the breathalyzer test, which was not conducted in compliance with the regulations. She presents two issues for our review. In her first issue, she alleges that the trial court erred by finding appellee had probable cause to arrest her where the basis for the probable cause was her refusal to submit to a field sobriety test. In her second issue, appellant contends that the results of the breathalyzer test should have been *Page 7 
suppressed because the testimony showed that the regulations for administering the test were not followed.
 {¶ 21} Initially, we note that this court stated in State v.Jones, 11th Dist. No. 2001-A-0041, 2002-Ohio-6569, at ¶ 16:
 {¶ 22} "[a]t a hearing on a motion to suppress, the trial court assumes the role of the trier of facts and, therefore, is in the best position to resolve questions of fact and evaluate the credibility of witnesses. State v. Mills (1992), 62 Ohio St.3d 357, 366 * * *. When reviewing a motion to suppress, an appellate court is bound to accept the trial court's findings of fact if they are supported by competent, credible evidence. State v. Guysinger (1993), 86 Ohio App.3d 592, 594
* * *. Accepting these findings of facts as true, a reviewing court must independently determine as a matter of law, without deference to the trial court's conclusion, whether they meet the appropriate legal standard. State v. Curry (1994), 95 Ohio App.3d 93, 96 * * *." (Parallel citations omitted.)
 {¶ 23} With respect to her first issue, "[i]n determining whether the police had probable cause to arrest an individual for [driving under the influence], we consider whether, at the moment of arrest, the police had sufficient information, derived from a reasonably trustworthy source of facts and circumstances, sufficient to cause a prudent person to believe that the suspect was driving under the influence. Beck v. Ohio (1964),379 U.S. 89, 91 * * *; State v. Timson (1974), 38 Ohio St.2d 122, 127 * * *. In making this determination, we will examine the `totality' of facts and circumstances surrounding the arrest. See State v. Miller (1997),117 Ohio App.3d 750, 761 * * *; State v. Brandenburg (1987),41 Ohio App.3d 109, 111 * * *." State v. Homan (2000), 89 Ohio St.3d 421, 427. (Parallel citations omitted.) *Page 8 
 {¶ 24} In the case at bar, appellant struck a pedestrian walking within a crosswalk with her vehicle. The testimony at the suppression hearing revealed that the intersection was well lit and the road conditions were flat and dry. Appellant admitted to driving the vehicle. Patrolman Fitzgerald testified that he smelled a moderate odor of an alcoholic beverage.
 {¶ 25} "An officer's detection of an odor of an alcoholic beverage is a relevant factor to determine if the officer has probable cause to arrest a suspect for [driving under the influence]." State v.Djisheff, 11th Dist. No. 2005-T-0001, 2006-Ohio-6201, at ¶ 37. A traffic accident and a suspect's involvement in it is a significant factor that goes into the equation of determining probable cause. When a police officer arrives at the scene of an accident and detects an odor of alcohol on the suspect, who admits to have driven the vehicle, the officer has probable cause to arrest for driving under the influence. See, e.g., State v. Hummel, 154 Ohio App.3d 123, 2003-Ohio-4602.
 {¶ 26} Also, appellant admitted that she consumed alcohol, specifically gin. "An admission by a driver that he has consumed alcoholic beverages is a factor to be considered in a probable cause determination for a [driving under the influence] arrest."Djisheff, supra, at ¶ 36, citing State v. Droste (1998),83 Ohio St.3d 36, 40; see, also, State v. Hynde, 11th Dist. No. 2004-P-0030,2005-Ohio-1416, at ¶ 11.
 {¶ 27} Further, appellant refused to take field sobriety tests. "* * * [A] refusal to take field sobriety tests may be taken into account when determining whether an officer had probable cause to effectuate an arrest." Djisheff, supra, at ¶ 31, citing State v. Molk, 11th Dist. No. 2001-L-146, 2002-Ohio-6926, at ¶ 19. *Page 9 
 {¶ 28} In addition, Patrolman Fitzgerald testified that appellant's eyes were bloodshot. Also, both Patrolman Fitzgerald and Lieutenant Beckwith indicated that there was an issue with appellant's concentration, due to the fact that she was more focused on talking on her cell phone than she was with talking with the officers.
 {¶ 29} Based upon the totality of the circumstances, Patrolman Fitzgerald had probable cause to arrest appellant.
 {¶ 30} Appellant's first issue is without merit.
 {¶ 31} With regard to her second issue, during the twenty-minute observation period prior to the administration of a breathalyzer test, "the testing officer must ensure that the subject refrains from the oral intake of any material." Ravenna v. Nethken, 11th Dist. No. 2001-P-0040, 2002-Ohio-3129, at ¶ 15, citing State v. Trill (1991),66 Ohio App.3d 622, 625.
 {¶ 32} "The Supreme Court of Ohio has held that `when two or more officers, one of whom is a certified operator of the BAC Verifier, observe a defendant continuously for twenty minutes or more prior to the administration of a breath-alcohol test, the observation requirement of the BAC Verifier operational checklist has been satisfied.' Bolivar v.Dick, 76 Ohio St.3d 216, syllabus * * *. The Supreme Court also noted that the focus of the mandatory observation period is `"to prevent oral intake of any material" and not to ensure that a certified operator does the observing.' 76 Ohio St.3d at 218, citing State v. Steele (1977),52 Ohio St.2d 187 * * *. Moreover, a Breathalyzer test administered in substantial compliance with department of health regulations is admissible absent a demonstration of prejudice. Bolivar,76 Ohio St.3d at 218; Defiance *Page 10 v. Kretz (1991), 60 Ohio St.3d 1, 3 * * *; State v. Plummer (1986),22 Ohio St.3d 292, * * * syllabus." Nethkea, supra, at ¶ 16. (Parallel citations omitted.)
 {¶ 33} In the instant matter, Officer Beckwith, a certified operator of the BAC DataMaster, observed appellant for a twenty-nine minute period. He specifically asked appellant if she had anything in her mouth and she responded that she did not. Both Officer Beckwith and Lieutenant Fitzgerald testified that they did not observe anything in appellant's mouth prior to taking the test. Based on the facts presented, the breathalyzer test was administered in substantial compliance with the regulations.
 {¶ 34} Appellant's second issue is without merit.
 {¶ 35} Appellant's first assignment of error is not well-taken.
 {¶ 36} In her second assignment of error, appellant maintains that her due process rights were violated due to ineffective assistance of counsel at the hearing on the motion to suppress. Appellant stresses that her counsel should have had their own expert testify as to the violation of the regulations and the invalid test results from having gum in one's mouth.
 {¶ 37} Strickland v. Washington (1984), 466 U.S. 668, 687 states:
 {¶ 38} "[a] convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction * * * has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the `counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose *Page 11 
result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction * * * resulted from a breakdown in the adversary process that renders the result unreliable."
 {¶ 39} "* * * When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness." Id. at 687-688. State v. Bradley (1989),42 Ohio St.3d 136, 142, quoting Strickland, supra, at 694, states: "[t]o warrant reversal, `(t)he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"
 {¶ 40} This court stated in State v. Rudge (Dec. 20, 1996), 11th Dist. No. 95-P-0055, 1996 Ohio App. LEXIS 5807, at 35-36, that: "`[s]trategic and tactical decisions will not form the basis of a claim of ineffective assistance of counsel, even if there had been a better strategy available to him. (* * *)' * * * `"Errors of judgment regarding tactical matters do not substantiate a claim of ineffective assistance of counsel." * * *.' State v. Lundgren (Apr. 22, 1994), [11th Dist. No. 90-L-15-125, 1994 Ohio App. LEXIS 1722], at 40-41."
 {¶ 41} In the case sub judice, again, the evidence established that appellant did not have gum in her mouth during the observation period prior to taking the test. Also, a review of the record shows that appellant's counsel was knowledgeable about the subject matter, as evidenced from his cross-examination of the officers as well as appellee's expert, and was well-prepared for the hearings. *Page 12 
 {¶ 42} Pursuant to Strickland, supra, appellant fails to show that her counsel's performance was deficient and that the deficient performance prejudiced the defense. Thus, she cannot show that but for her counsel's "errors," the result of the proceeding would have been different.
 {¶ 43} Appellant's second assignment of error is without merit.
 {¶ 44} For the foregoing reasons, appellant's assignments of error are not well-taken. The judgment of the Lake County Court of Common Pleas is affirmed. It is ordered that appellant is assessed costs herein taxed. The court finds there were reasonable grounds for this appeal.
 DIANE V. GRENDELL, P.J., TIMOTHY P. CANNON, J., concur. *Page 1